**PLACEWAY CONSTRUCTION CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 382–87C.**

United States Claims Court.

Sept. 8, 1989.

---

Vincent Zichello, New York City, for plaintiff.

Carolyn E. Galbreath, Washington, D.C., with whom were Asst. Atty. Gen. John R. Bolton, Director David M. Cohen, and Asst. Director Mary S. Mitchelson, for defendant. George Kuehle, U.S. Coast Guard, of counsel.

## OPINION

LYDON, Senior Judge:

This action under the Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat. 2383, 2385–88 (1978) (codified at 41 U.S.C.

§ 605(c)(1), 609(a)(1) (1982)) (the CDA), comes before the court on defendant's motion to dismiss plaintiff's complaint, because plaintiff failed to obtain certification and/or a final decision from the contracting officer (CO) as specified by the CDA, for claims it presented to the contracting officer, and now seeks to litigate in this court.

Plaintiff opposes defendant's motion, contending that, under the circumstances of this case, certification was not required. Plaintiff does not address the final decision of the CO issue in any meaningful way. Certification under the CDA for contract claims in excess of $50,000 is a jurisdictional requirement for filing complaints in this court. The same jurisdictional requirement exists for a final decision by the CO.

After consideration of the submissions of the parties, and following oral argument, the court concludes that defendant's motion has merit.

### Facts

On January 31, 1983, Placeway Construction Corporation (Placeway) entered into a construction contract with the United States Coast Guard to build thirty-one units representing Phase I of the Brick Village Family Housing on Governors Island, New York. Valued at $3,844,000, the contract was scheduled for completion within 365 calendar days of its execution. A notice to proceed with construction was issued on February 25, 1983. During the course of construction, various modifications resulted in extending the contract completion date to June 27, 1984. Undisputed facts reveal that plaintiff substantially completed the contract on December 10, 1984, about six months after the scheduled completion date.

On May 28, 1986, Placeway submitted a letter to the CO which read as follows:

We are submitting herewith for you [sic] review and payment our claim for compensation due our firm as follows:

—Balance due on contract ...........
$297,226.12 [balance due claim]

—Additional work per enclosed claims 1 thru 31 .......... $287,047.89 [additional work claim]

—Extended overhead expenses, not including suppliers and subcontractors ........... $119,585.91 [extended overhead claim]

Total $703,859.92

We are also requesting an adjusting of the contract performance time of 187 calendar days to allow for various delay reasons as outlined.

Attached to plaintiff's May 28 letter was a thirty-one-item breakdown of the additional work claim and an explanation of how the amount of the extended overhead claim was computed. None of the above three claims was certified in accordance with 41 U.S.C. § 605(c)(1) (1982).

On September 4, 1986, the CO denied plaintiff's claims in a letter defendant maintains was not a "final decision" pursuant to the CDA. Materials before the court indicate that defendant originally denied the claims because it anticipated receiving claims from contractors on other projects supposedly caused by plaintiff's delay in performing the contract and it intended to offset amounts found due the Government from plaintiff against amounts found due plaintiff from the Government. On September 8, 1986, plaintiff responded to the CO's letter of September 4, 1986, taking issue with the contents of said letter and requesting reconsideration of the determinations reached by the CO.

Responding to plaintiff's request of September 8, 1986, the parties met informally on October 21, 1986, ostensibly to consider further plaintiff's claims. Plaintiff alleges in its briefs that defendant stated in that meeting "the matter would be reviewed further, after which a further written communication could be expected." To date, the record before the court indicates that defendant has not communicated with plaintiff in writing nor called a "promised," informal administrative conference to examine further plaintiff's disputed claims. Conversely, the record also reveals that, to date, plaintiff has failed to submit certified claims to the CO.

On June 26, 1987, plaintiff filed a six-count complaint in this court seeking "declaratory relief" and monetary damages of $634,429.98.[1] Plaintiff in its complaint seeks the following:

Count I. A declaratory judgment directing defendant to pay plaintiff for the work plaintiff states it already has performed on the contract, and rejecting defendant's reasons for withholding the payments.

Count II. A money judgment of $297,226.12, plus interest dating from February 21, 1985, which plaintiff alleges is the difference between the payment of $3,659,622.12, the amount it already has received from the Coast Guard and the "adjusted contract price" of $3,956,848.24. Plaintiff claims that it is entitled to the difference owed because it "substantially completed" the Governors Island project within the specified time, barring excusable delays—some of which plaintiff maintains were caused by defendant—that extended the contract's completion date.

Count III. An equitable adjustment of $50,000, plus interest dating from May 28, 1986, which plaintiff avers represents the amount the CO wrongfully withheld from plaintiff's contract price. Plaintiff alleges that the deficiency was caused by using a misleading wage-rate schedule.

Count IV. An equitable adjustment of $27,366, caused by costs of performance increases plaintiff incurred as a result of site conditions that it maintains differed materially from those recorded in the contract drawings.

Count V. A favorable adjustment of $140,251.95 to cover extra or additional work and costs resulting from "changes, constructive changes and defective specifications" plaintiff states were precipitated by the CO's actions.

Count VI. Costs of performance increases, which plaintiff states are owing due to extended overhead costs amounting to $119,585.91, plus interest from May 28, 1986.

Counts I and II were the same as the "balance due claim" sent to the CO on May 28, 1986. Counts III, IV and V were included in the "additional work claim" sent to the CO on May 28, 1986. Count VI is the same as the "extended overhead claim" sent to the CO on May 28, 1986.

Discussion

Defendant maintains that Count I should be dismissed because plaintiff seeks a declaratory judgment, a remedy the Claims Court is without jurisdiction to grant. The remaining Counts, defendant asserts, exceed the $50,000 statutory limit set by the CDA and, therefore, must be certified before the court can properly entertain those claims.

■ Defendant states, quite correctly, that both the CDA and the contract's language "unequivocally" require a contractor to certify any claim over $50,000. See Schlosser v. United States, 705 F.2d 1336, 1339 (Fed.Cir.1983). Defendant recognizes, however, that Counts III and IV, when fragmented and set out in separate Counts as plaintiff did in its complaint, facially appear not to require certification because each Count as fragmented seeks to recover less than $50,000. However, defendant stresses, these claims as presented to the contracting officer, were parts of one unified "additional work claim" of $287,047.89 and thus had to be certified. It is the claims as presented to the contracting officer, defendant argues, that determine certification compliance, not the format or manner in which the claims are presented in the complaint. There is precedence for defendant's position in this regard. See Contract Cleaning Maintenance, Inc. v. United States, 811 F.2d 586, 591–92 (Fed.Cir. 1987).

Plaintiff responds, in its Opposition to Defendant's Motion to Dismiss, that the

1. This amount is $69,429.94 less than the claim plaintiff submitted in its May 28, 1986 letter to the CO. The discrepancy, however, has not been fully explained in any materials before the court. At oral argument, plaintiff's counsel attributed the difference in the total claim amount as resulting from the deletion of an interest payment item of $69,433.91 from the additional work claim.

statute does not require certification when the contractor is merely seeking a payment otherwise due but withheld by the Government, (Count II) because such an amount is basically a government claim. It is established that a government claim does not have to be certified. Plaintiff classifies the amount contained in the first two counts as a "government claim," because the CO withheld payments of the balance due on the contract to cover other contractors' delay costs allegedly caused by plaintiff's original delay in starting construction on its phase of the project. Finally plaintiff insists that the remainder of its complaint comprises individual, separate and independent claims that do not exceed $50,000, and, therefore, do not require certification.

Defendant, in its Reply to Plaintiff's Opposition, contends that the court is without jurisdiction to dispose of any government claim or contractor claim under the CDA unless it is the subject of a CO's final decision. Defendant, however, does not contest, in a meaningful way, the contention by plaintiff that the claim set forth in Counts I and II is a "government claim." Instead, defendant's position is that Count II must be dismissed because the CO has not rendered a final decision on the government claim set forth therein.

Defendant further points out, with reference to Counts III—V, the additional work claim, that plaintiff's characterization of the items submitted as "separate claims" does not govern whether certification should be required. Further, defendant maintains that the thirty-one items contained in the additional work claim should be deemed aggregate claims which spring from common operative facts and, thus, for certification purposes, would constitute a single claim under the circumstances of this case.

### A. *Balance Due Claim—$297,226.12.*

Counts I and II of plaintiff's complaint request alternative remedies for the same amount. Plaintiff, in Count I, asks this court to issue a declaratory judgment directing defendant to pay plaintiff $297,-226.12, plus interest dating from February 21, 1985. This amount, according to plaintiff, represents the balance due on the contract. In Count II, plaintiff requests a money judgment for the same amount. Plaintiff also describes the money judgment as a "government claim," because the government denied the claim in order to cover the costs of delay claims it may have to pay out to other contractors working on other phases of the Governors Island project under different contracts.

Plaintiff contends that, though the Government is not affirmatively asserting the claim for the amount in question, its refusal to issue the payment of $297,226.12 to plaintiff is tantamount to a final decision giving rise to a government claim over which this court may exercise jurisdiction.

Defendant counters, without denying or admitting the existence of a government claim that the CO has not issued a final decision regarding the amount in question. Defendant further maintains that the Claims Court is without jurisdiction to dispose of a "government claim unless they [sic] are the subject of a CO's final decision."

### 1. Declaratory Judgment—Count I

■ Regarding Count I, the Supreme Court, writing in *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), clearly prohibited this court's predecessor from issuing declaratory judgments. More recently, in *Alan J. Haynes Constr. v. United States*, 10 Cl.Ct. 526 (1986), this court held that it lacked jurisdiction over a claim brought under the CDA "seeking only declaratory relief." *Id.* at 526. *See also Williams Intern. Corp. v. United States*, 7 Cl.Ct. 726, 728–31 (1985).

Applying these holdings to the facts of the case at bar, the court concludes that it lacks jurisdiction to consider Count I of plaintiff's complaint, since it is solely a request for declaratory judgment. It does not seek a money judgment from the court. Even if one were to view Count I as sufficient to confer jurisdiction on this court, *see Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967), Count I is duplicative of or alternative to Count II. Thus no harm befalls plaintiff

by removal of this duplicative Count in any event.

### 2. Government Claim—Count II

Considering Count II, the court must determine if the balance of $297,226.12 is a government claim. If it is a government claim, then the court must decide whether it has jurisdiction to consider such a claim inasmuch as the CO's September 4, 1986 letter is not expressly referred to as a "final decision."

■ If the court concludes that the claim at issue is a government claim, plaintiff need not certify the claim. Nonetheless, if that government claim was not the subject of a final decision, as the Government contends, this court would not have jurisdiction to settle a dispute concerning it. *See Teller Envt'l Systems, Inc. v. United States*, 802 F.2d 1385, 1390 (Fed.Cir.1986); *see also Berna Gunn–Williams v. United States*, 6 Cl.Ct. 820, 823 (1984) (linchpin for appealing claims under the [CDA] is the contracting officer's final decision); *Newport News Shipbuilding and Dry Dock v. United States*, 7 Cl.Ct. 549, 555–56 (1985) (until a final decision has been rendered by contracting officer, plaintiff has not exhausted his administrative remedies for purposes of bringing direct access action to Claims Court under the [CDA]).

■ The portions of the CDA regarding the need for finality of a contractor's decision on any claim read, in pertinent part, as follows:

All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. *All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter . . . .*

41 U.S.C. § 605(a) (1982) (emphasis added).

Case law in this field provides no clear guidelines on what constitutes a government claim. The Federal Acquisitions Regulations (FAR), however, offer the following definition, in pertinent part:

"Claim," as used in this subpart, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. . . . However, a written demand or written assertion by the contractor seeking the payment of money exceeding $50,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act. . . .

48 C.F.R. 33.201 (1988).

Though the language of the FAR requires a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain," the court determines that, in the case at bar, the Government has asserted a right of set off which is tantamount to seeking "the adjustment . . . of contract terms. . . ." In this sense, the Government's assertion of its right to set off is equivalent to the assertion of a government claim within the meaning of the FAR. Therefore, this court agrees with plaintiff's contention that Count II presents a government claim, as well as with plaintiff's position that a government claim does not require certification.

The court's conclusion is further supported by case law, which views the Government's right of set off as a government claim. *See Dale Ingram, Inc. v. United States*, 201 Ct.Cl. 56,. 76–77, 475 F.2d 1177, 1188 (1973); *see also Project Map, Inc. v. United States*, 203 Ct.Cl. 52, 54–55, 486 F.2d 1375, 1376–77 (1973) (Government has right to set off monies due it before paying its debt to its debtor; right is not restricted solely to a debt which is admitted by the debtor).

■ Unless the amount of set off has been determined as part of a final decision by the CO, however, this court is without jurisdiction to entertain plaintiff's action to

recover the withheld amount of the contract in issue. *See Teller Envt'l Systems, supra,* 802 F.2d at 1390. The facts presented here indicate that the amount of the Government's set off most likely will not be ascertained until the contractors on the remaining phases of the Governors Island project submit their claims, detailing costs caused by Placeway's delays in completing its contract. Until such claims are determined by the CO, the Government is precluded from issuing a final decision on the matter, and the Claims Court, consequently, is without jurisdiction to settle the dispute over the amount contained in Count II. *Id. See also Dale Ingram, supra,* 201 Ct.Cl. at 76–77, 475 F.2d at 1188; *Swager Tower Corp. v. United States,* 12 Cl.Ct. 499, 500 (1987).

■ As indicated earlier, plaintiff in its brief did not address the issue raised by the defendant, as to whether or not the September 8, 1986 letter from the CO to plaintiff was a "final decision" letter. However, in its complaint, plaintiff seemingly concedes that it was not a final decision. The fact that the letter does not contain any language stating it is a "final decision" and does not contain the "appeal rights" language required by regulation (see 48 C.F.R. 33.21, revised as of Oct. 1985) to be included in any "final decision" issued by the CO is certainly some indication that the CO, at least, did not view his letter as a "final decision" on plaintiff's claims. Supporting this view, is the fact that the parties themselves continued to discuss the claims following the September 8, 1986 letter, a course of action by the parties consistent with the view that a "final decision" had not been rendered by the CO. Finally, the fact that the CO expected claims by other contractors to be submitted based on delays to their contracts for which the CO felt plaintiff was responsible, reasonably precluded, in the CO's view, any final decision on plaintiff's claim and the Government's claim until all involved money matters were on the table so that a set off process could effectively set the stage for a final decision on the subject of the claims, Government's and plaintiff's, contained in plaintiff's complaint. This fact serves to weaken plaintiff's assertion in its complaint that the failure of the CO to issue a final decision on the merits of the claims justifies the court in considering the claims without requiring the issuance of a CO's final decision. Since the claims were not certified, the issuance of a final decision could not be validly accomplished in any event. *See Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1384 (Fed. Cir.1983), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). The court concludes that under the circumstances discussed above and under the controlling regulations, the CO's letter of September 8, 1986 was not a final decision sufficient to confer jurisdiction on this case relative to plaintiff's claim letter of May 28, 1986. *See Keystone Coat & Apron Mfg. Corp. v. United States,* 150 Ct.Cl. 277, 280–82 (1960).

In the absence of a CO's final decision on the set off amount, the court is without jurisdiction to entertain Count II of plaintiff's complaint regarding the government claim set forth therein.

### B. *Additional Work Claim—$217,617.95.*[2]

■ In its claim letter of May 28, 1986 to the CO, plaintiff sought $287,047.89 for additional work it alleged it performed under the contract in question. In support of this claim, plaintiff attached to its May 28, 1986 letter a schedule setting forth thirty-one components of this additional work claim.

In its complaint, plaintiff fragmented the additional work claim of $287,047.89 it presented to the CO into Counts III, IV and V. These Counts embraced twenty-four claim items instead of the thirty-one claim

---

2. As indicated in footnote 3, *infra,* plaintiff has deleted Item No. 28—Interest Payment, $69,433.91 from its additional work claim. This serves to reduce the total amount of the additional work claim of $287,047.89 presented to the CO to $217,617.95, a difference of $69,329.94.

items presented to the CO.[3]

Plaintiff lifted the differing site claim item from the aggregate schedule presented to the CO and set it forth as a separate and independent claim under Count III of the complaint. Likewise, plaintiff lifted the defective wage rate schedule claim from the aggregate schedule presented to the CO and set it forth as a separate and independent claim under Count IV of the complaint. Interestingly, plaintiff set forth the remaining twenty-two claim items, which were in the aggregate schedule presented to the contracting officer, as claim items in Count V.[4]

Plaintiff looks on the claims set out in Counts III, IV and V as individual, separate and distinct claims which, individually, do not exceed $50,000 and thus do not have to be certified. Plaintiff reads cases such as *Warchol Constr. Co., Inc. v. United States*, 2 Cl.Ct. 384 (1983); *Walsky Constr. Co. v. United States*, 3 Cl.Ct. 615 (1983); and *H.H.O. Co. v. United States*, 12 Cl.Ct. 147 (1987) as supportive of its view in this regard. Defendant, on the other hand sees the aggregate items of claim as "unitary," in the broad sense of the word, and argues that plaintiff should not be allowed to fragment its demand into multiple, individual claims in order to circumvent the certification requirement of the CDA, relying on *LDG Timber Enterprises, Inc. v. United States*, 8 Cl.Ct. 445 (1985); *Palmer & Sicard, Inc. v. United States*, 4 Cl.Ct. 420 (1984); *Black Star Sec., Inc. v. United States*, 5 Cl.Ct. 110 (1984) and *Fidelity and Deposit Co. of Maryland v. United States*, 2 Cl.Ct. 137 (1983). Both parties can find comfort for their positions in the cited cases but the bottom line in cases such as these depends on the particular circumstances of each case. This explains why each party can find facial support for their positions in reported cases. What the court must do is direct its attention to the circumstances of this case.

The claims presented in Counts III, IV and V were presented to the CO as a unitary claim for additional work in the amount of $287,047.89. A summary schedule was attached to the claim letter containing an itemization of each unit of the additional work claim. Under these circumstances, the court is of the view that the claim, as presented to the CO, had to be certified. As held in *Contract Cleaning, supra*, 811 F.2d at 586, 591–92, it is the claim presented to the contracting officer that is determinative of certification requirements, not the format or claim fragmentation set forth in the complaint to this court. Since the additional work claim of $287,047.89 was unitary before the CO, although it was comprised of individual items, it should have been, under the circumstances, certified.

It is important to bear in mind that the certification requirement furthers an important congressional objective of discouraging the submission of unwarranted contractor claims. *Paul E. Lehman, Inc. v. United States*, 673 F.2d 352, 354 (Ct.Cl. 1982). It is felt that enforcement herein of

---

**3.** Of the 31 component items set forth in this schedule, 25 of these items of claim sought money damages. Six items of claim sought no money damages but did seek additional time extensions for contract performance. Parenthetically, the time extensions requested in this schedule were undoubtedly related to the separate extended overhead claim made by plaintiff. Among the 25 items of additional work claim seeking money damages were Item No. 1—Underpayment of Wages Due to Defective Specifications, $50,000 (*no request for additional days*) and Item No. 10—Differing Site Conditions, $27,366 (request for 24.50 additional days). At oral argument, plaintiff's counsel advised that Item No. 28—Interest Payment, $69,433.91 was withdrawn when plaintiff filed its complaint in this case. While the plaintiff sought $703,-859.12 in its May 28, 1986 claim letter to the CO,

its claim in its complaint is for $634,429.98, a claim reduction of $69,429.91. A slight disparity between the interest claim submitted to the CO ($69,433.91) and the difference between the total claim submitted to the CO and the total amount sought in the complaint ($69,329.94) is noted. (*See* n. 2, *supra*.)

**4.** Since plaintiff's position is that all 24 claim items are separate and independent claims and thus are not required to be certified, one wonders why the remaining 22 items were not set out as separate and independent Counts as were the items in Counts III and IV. In any event, plaintiff's fragmentation of claims in its complaint should not control the certification issue. See *Fidelity and Deposit Co.*, supra, 2 Cl.Ct. at 137, 145.

the requirement for certification on the basis of the circumstances presently before the court, properly implements this congressional objective.[5] *See Ball, Ball & Brosamer v. United States*, 878 F.2d 1426 (Fed.Cir.1989).

Even if one were to conclude that certification was not necessary relative to plaintiff's additional work claim, the previous holding that the September 8, 1986 determination by the CO was not a final decision for CDA purposes would serve to require dismissal without prejudice of plaintiff's additional work claim.

### C. *Extended Overhead Claim—$119,-585.91.*

■ In Count VI, plaintiff seeks to recover $119,585.91 as "extended overhead expenses" it incurred in performing the Governors Island Brick Village contract. Plaintiff's expenses, accumulated over 192 days of delay, and $91,480.41 of "office expenses", incurred over 187 calendar days of delay.

Plaintiff presented this claim to the CO in its letter of May 28, 1986 and attached an explanation sheet to its letter as to how it computed the amount claimed.

Plaintiff claims delay damages "for the impact on other contract work, of a variety of different circumstances, caused by different factors, and occurring at different stages, that prolonged the entire time of performance." Plaintiff further contends that, though the total sought "for all these delays added together," is about $119,585, the largest single, separate delay-causing factor represents about $44,000, well below the certification threshold. Plaintiff does not identify this single, separate delay-causing factor or, for that matter any of the delay factors from which a judgment might be made that the factor(s) were indeed separate, distinct and independent rather than unitary. Plaintiff refers to "29 different delay-causing" problems without actually explaining the nature of these delays. The only glimpse the court has into any of these "29 different delay-causing" problems is provided in supporting documents both parties submitted containing letters Placeway wrote the Government requesting extensions for a varying number of calendar days.

Assuming the causes cited in plaintiff's letters requesting the delays are typical of those associated with all the delays, the court finds the classification of these causes of no moment in resolving the issue of whether the entire delay claim should be viewed as a unitary claim subject to certification, or as legitimate, separate delay claims that do not require certification.

Instead, the court believes that the nature of plaintiff's delay claim dictates that it must be viewed as one that must be certified.

In computing its delay damage claim figure, plaintiff essentially utilized the Eichleay formula. *See Capital Elec. Co. v. United States*, 729 F.2d 743, 747 (Fed.Cir. 1984). To arrive at the "field office" component of the delay claim, plaintiff utilized the weekly salary and travel expenses of the Field Superintendent on the Brick Village contract and multiplied it by the total weeks of delay (192 delay days = 27.4 weeks $\times$ $1,023 = $28,105.50). To arrive

---

**5.** The certification requirement is not an onerous one. It merely calls for a declaration of honesty and good faith on the part of the contractor in the submission of claims to the CO. It has been documented that certification serves a purpose. See *Fidelity Constr. Co.*, supra, 700 F.2d 1379, 1383, cert. denied, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983) (25 item claim totaling $237,348.12 required to be certified). In the case at bar, plaintiff's counsel at oral argument in response to questions about why contractors are reluctant to provide a certification when it is so easy to do so responded that he recommended to plaintiff that it certify the claims it was presenting to the CO, even though he personally did not feel certification was required, but the plaintiff refused to do so. "... Certification is not a mere technicality to be disregarded at the whim of the contractor...." *Id.* at 1384. Interestingly, plaintiff's vice president, in an affidavit attached to plaintiff's opposition brief, indicates that he has "absolutely no reluctance to certify." By dismissing the complaint without prejudice, plaintiff can do just that. If a contractor or his attorney has any qualms about certification of a claim, it should err on the side of certification and not against certification. By doing so, contractors will obviate jurisdictional skirmishes such as the one now before the court.

at the "office expense" of the delay claim, plaintiff allocated the total office expense incurred by plaintiff among three different projects plaintiff was performing during the period at issue. Plaintiff felt that sixteen percent of the total office expense (or $633,095) should be allocated to the Brick Village project. Utilizing a formula, which included, *inter alia,* a 187 delay day figure, plaintiff computed its office expense delay claim to be $91,480.41. The total of $28,105.50 and $91,480.41 = $119,585.91 and represents plaintiff's "extended overhead expense" claim.

There is no indication in the way plaintiff calculated its delay costs, nor in the manner it presented its claim to the CO in the attachment to its May 28, 1986 letter, that plaintiff attempted to present separate delay claims of less than $50,000 each. In any event, if plaintiff had wanted to fragmentize its delay claim, it would have found it difficult to do so, because all its claims in Count VI resulted only from delays, the varying causes of which do not make any one delay item distinct, or separate, from the other. Considering this common factual thread contributing to the creation of plaintiff's claim—delays in performance of the contract—this court would be hardpressed to view plaintiff's claim as containing "separate and individual claims not requiring certification." *See Walsky, supra,* 3 Cl.Ct. at 617; *see also Fidelity and Deposit Co., supra,* 2 Cl.Ct. at 145 (fragmentation into multiple claims, each below the certification threshold, was for no apparent purpose other than to escape the certification requirements). The manner in which plaintiff's delay claim was computed embraced the entire contract spectrum and compels the conclusion that it must be viewed as a unitary claim requiring certification and not as a series of separate independent and unrelated delay claims each under $50,000 and thus not requiring certification.

The cases relied on by plaintiff in support of its position that its extended overhead expense claim consisted of varied and separate delay claims which do not require certification, do not support its position. As presented by plaintiff, there is no way to consider plaintiff's delay claim except as a unitary claim which, since it exceeds $50,000, must be certified. Moreover, even if one were to overlook plaintiff's certification deficiency, there has been no final CO decision on the claim as discussed previously in this opinion, and thus, the court lacks jurisdiction to consider the extended overhead expense claim in any event.

### Conclusion

For reasons set forth above defendant's motion to dismiss is granted. The clerk is directed to enter judgment dismissing plaintiff's complaint without prejudice. No costs.