86 F.3d 1175
 40 Cont.Cas.Fed. (CCH) P 76,935
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
KIT-SAN-AZUSA, a joint venture, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant/Cross-Appellant.
 Nos. 95-5070, 95-5079.
 United States Court of Appeals, Federal Circuit.
 May 7, 1996.
Rehearing Denied July 8, 1996.
 
 Before PLAGER, LOURIE and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 Kit-San-Azusa (KSA) appeals and the United States (government) cross-appeals the January 24, 1995 decision of the United States Court of Federal Claims, Kit-San-Azusa, J.V. v. United States, 32 Fed. Cl. 647 (1995). We affirm-in-part, modify-in-part, and remand for final disposition.
 
 
 1
 * In August of 1984, the United States Bureau of Reclamation (USBR) awarded a $15 million contract to KSA to build the third and final portion of an irrigation system. The project consisted of constructing pumping plants and 35 miles of pipeline. This dispute centers around the construction of the Osoyoos Pumping Plant (OPP).
 
 
 2
 On appeal, KSA challenges three decisions of the Court of Federal Claims: (1) that the Court of Federal Claims had jurisdiction to entertain the government's liquidated damages counterclaim against KSA; (2) that KSA did not establish that USBR's design of the OPP was faulty; and (3) that KSA was entitled to pre-judgment interest only on the difference between its claim and the government's counterclaim. The government cross-appeals the finding that KSA established that a differing site condition occurred at the OPP.
 
 II
 
 3
 Findings of fact made by the Court of Federal Claims are reviewed under a clearly erroneous standard. Whitney Benefits, Inc. v. United States, 926 F.2d 1169, 1171 (Fed.Cir.), cert. denied, 502 U.S. 952 (1991). Legal conclusions of the Court of Federal Claims are reviewed de novo. Dehne v. United States, 970 F.2d 890, 892 (Fed.Cir.1992). We have jurisdiction under 28 U.S.C. § 1295(a)(3) (1994).
 
 III
 
 4
 Because one of KSA's allegations involves the scope of the Court of Federal Claims' jurisdiction, we address that issue first. KSA argues that the Court of Federal Claims should not have allowed the government to litigate its liquidated damages counterclaim because the government allegedly failed to comply with the jurisdictional prerequisites of the Contract Disputes Act of 1978(CDA). The CDA provides in relevant part that:
 
 
 5
 All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer.... The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter.
 
 
 6
 41 U.S.C. § 605(a) (1994). Although the CDA does not specifically define "claim," the Federal Acquisitions Regulations define a "claim" as: "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201 (1994).
 
 
 7
 KSA argues that the contracting officer (CO) never issued a final decision on USBR's assessment of liquidated damages against KSA for late performance. Since a final decision by the CO for a government claim is a prerequisite for the government to litigate its claim in the Court of Federal Claims, see Sharman Co. v. United States, 2 F.3d 1564, 1568-69 (Fed.Cir.1993), KSA asserts that the Court of Federal Claims lacked jurisdiction to entertain the government's liquidated damages claim. While we agree with KSA that the CO never issued a written final decision under the CDA on the government's claim, this deficiency does not preclude the government from litigating its liquidated damages counterclaim in the Court of Federal Claims. This exception to the rule is stated in Placeway Construction Corp. v. United States, 920 F.2d 903 (Fed.Cir.1990), a precedent which governs the jurisdictional question in this case.
 
 
 8
 In Placeway, the contractor Placeway entered into a contract with the United States Coast Guard to construct residential housing. After construction was completed, Placeway submitted a voucher on January 21, 1985 for the contract's unpaid balance of $297,057.12 plus compensation for various unforeseen expenses. On September 4, 1986, the CO denied Placeway's request to release the unpaid balance because Placeway had failed to complete the contract in a timely manner. In essence, the government set off its delay damages claim against the unpaid balance claimed by Placeway because Placeway's alleged delays exposed the government to liability to other contractors who might later submit delay claims against the government. Placeway then sued on its CDA claim in the Court of Federal Claims. In relevant part, the Court of Federal Claims held that because the CO failed to assert a sum certain of delay damages against Placeway, the CO had not issued a final decision necessary to invoke Court of Federal Claims' jurisdiction for review of the government's assessment of such damages. See Placeway Constr. Corp. v. United States, 18 Cl.Ct. 159, 164-65 (1989), aff'd-in-part and vacated-in-part, 920 F.2d 903 (Fed.Cir.1990).
 
 
 9
 Relying on Teller Environmental Systems, Inc. v. United States, 802 F.2d 1385, 1388-89 (Fed.Cir.1986), which held that a CO's decision is final if it resolves the issues of liability and damage, this court reversed the Court of Federal Claims. This court reasoned that the CO's actions constituted a CDA final decision because the CO had, with respect to the government's set-off claim, determined both liability against Placeway and damages in the amount of the unpaid contract balance of $297,057.12. Certainty as to quantum was derived from the CO's complete rejection of Placeway's claim to the unpaid balance. This was so even though the CO had reserved the right to revise the delay damages incurred by the government at some future time. Further, the CO's failure to include the boilerplate language regarding appeal rights did not affect the decision's finality. See Placeway Constr. Corp. v. United States, 920 F.2d 903, 907 (Fed.Cir.1990). Placeway thus stands for the proposition that a government set-off claim will be deemed to have received a final CO decision, and thus be satisfactory for CDA jurisdictional purposes, if the CO states in writing the subject of the government's claim and the specific amount claimed for the government in the context of assessing a CDA claim made by a contractor.
 
 
 10
 Placeway 's requirements are met in this case. On August 10, 1989, the CO sent KSA a letter clearly detailing the government's assessment against KSA in the amount of $969,500 for liquidated damages due to KSA's failure to perform in a timely manner. As in Placeway, this communication unequivocally set forth the government's view of liability and damages due to the delay. The August 10 communication is deemed to be a valid government claim under the CDA, which vested the Court of Federal Claims with the necessary jurisdiction to entertain the government's liquidated damages claim against KSA. As neither side appealed the merits of the Court of Federal Claims' finding that the government is entitled to collect $469,000 in liquidated damages, the decision of the Court of Federal Claims to assess that amount against KSA is undisturbed.
 
 IV
 
 11
 We next review two Court of Federal Claims' rulings related to the execution of the contract: (1) that KSA encountered a differing site condition when excavating the OPP site; and (2) that KSA did not establish that USBR's design of the OPP was faulty.
 
 
 12
 KSA's Claim Of A Differing Site Condition At The OPP
 
 
 13
 The government cross-appeals the Court of Federal Claims' determination that KSA encountered a differing site condition during the excavation for the OPP. To prevail on a claim for a differing site condition, KSA must show by a preponderance of the evidence that the conditions indicated in the contract differed materially from those encountered during contract performance. See Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1581 (Fed.Cir.1987); P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913, 916 (Fed.Cir.1984).
 
 
 14
 USBR provided KSA with its own extensive testing of the geological nature of the area surrounding the OPP. In part, this geological survey was accomplished by drilling the ground at various pre-determined areas and recording what was found (drill logs). Although the drill logs stated that no boulders (rocks 12 inches or more in diameter) were found, some drill logs noted the presence of cobbles (rocks 3-12 inches in diameter). Besides the drill logs, USBR also provided KSA with a general description which stated that cobbles and boulders were present throughout the site.
 
 
 15
 The contract required KSA to build the cofferdam using sheet pile. KSA, however, encountered difficulty building a sheet pile cofferdam around the perimeter of the OPP. As KSA attempted to drive the sheets, it encountered obstructions in the soil severe enough to destroy the driving ends of the sheet piles. At one point, KSA hit a boulder the size and shape of a Volkswagen automobile. Once KSA had overcome these obstacles and began deep excavation, KSA discovered that the underlying soil contained a large quantity of boulders and cobbles. At trial, KSA claimed that the excess amount of cobbles and boulders found at the OPP site constituted a differing site condition. After thoroughly considering and weighing all of the relevant facts, the Court of Federal Claims agreed with KSA.
 
 
 16
 On appeal, the government contends that the Court of Federal Claims erred because it was KSA's burden to prove that the conditions encountered were reasonably unforeseeable based upon all of the information available at the time of bidding. This includes information a reasonable contractor would have derived from a reasonable on-site inspection. The government argues that the generalized description showing cobbles and boulders should have served as a warning to KSA that boulders and cobbles would be present in all areas of the excavation. Additionally, the contract specifically stated that the drill logs were not to be relied upon exclusively by the contractor.
 
 
 17
 KSA counters that USBR's general description of boulders and cobbles throughout the site was not as probative as the drill logs showing only gravel, sand, and loose cobbles at specific drilling points throughout the OPP site. The absence of boulders and nested cobbles in the drill logs was significant since it was the presence of nested cobbles and boulders in the OPP site that actually prevented KSA from properly driving the sheet piles necessary to build the cofferdam.
 
 
 18
 After a careful review of the arguments, we agree with the Court of Federal Claims that KSA encountered a differing site condition. As did the Court of Federal Claims, we take USBR's insistence that sheet pile be used to construct the cofferdam as a reinforcement of the drill logs' conclusions that boulders and large amounts of cobbles would not be present in the soil to hinder the pile driving. Although KSA was on some notice that boulders might be present based on USBR's generalized description of the OPP area, KSA was entitled to rely on the more specific drill logs showing no boulders or nested cobbles at the OPP site.
 
 
 19
 The quantum of additional expenses incurred by KSA while excavating OPP because of its erroneous conception of OPP's soil composition is uncontested in this appeal. Therefore, the Court of Federal Claims' award to KSA of $229,704.32 for a differing site condition at the OPP stands.
 
 
 20
 KSA's Claim That The Design Of The OPP Was Faulty
 
 
 21
 The plant design called for KSA to excavate the plant site 60 feet into the ground and then backfill eight feet of the hole with approved materials. KSA was then required to install a concrete slab on the backfill which would become the floor of the OPP's underground in-take facility. On August 28, 1985, USBR checked the elevation of the floor and found it to be lower than the contract specified. In the fall of 1985, KSA placed concrete in the basement floor and walls, installed the manifold (the structure that was to be built above the basement), and partially encased the manifold in concrete.
 
 
 22
 When work resumed in the spring of 1986, KSA found that the OPP plant had settled two or three inches over the winter and claimed that this was due to faulty USBR design. USBR disagreed, arguing that the plant settled because KSA had not fixed the settlement problem identified by USBR on August 28, 1985. At trial, the Court of Federal Claims found that KSA had not proven that the faulty USBR design caused the settling and denied KSA's claims for damages that resulted therein.
 
 
 23
 KSA appeals this determination of the Court of Federal Claims, claiming that it strictly followed the USBR's design specifications for OPP, and is therefore entitled to the additional expenses it incurred because of the two-inch settlement. KSA has failed to establish how the OPP design was defective or to show why the Court of Federal Claims' factual determinations were clearly erroneous. The fact that KSA encountered problems in following the instructions of the USBR in constructing OPP does not alone establish that the government is responsible for such difficulties. The decision of the Court of Federal Claims on this issue is affirmed.
 
 Summary
 
 24
 We affirm the Court of Federal Claims' award of $229,704.32 to compensate KSA for the differing site condition found at the OPP excavation and affirm the Court of Federal Claims' finding that KSA failed to prove that the USBR's design of the OPP was flawed. Because the Court of Federal Claims' awards to KSA for claims surrounding the West Osoyoos Tank ($87,002.38) and pipeline efficiency loss ($274,070.10) are not at issue on this appeal, KSA is entitled to a total claim of $590,776.80 against the government. Thus, the Court of Federal Claims' award to KSA of $121,776.80, which is KSA's total claim of $590,776.80 minus the government's set-off for liquidated damages of $469,000, remains unchanged.
 
 V
 
 25
 Finally, we review the Court of Federal Claims' award of interest. KSA claims that it is entitled to interest on the sum held in an escrow account which was created under the contract's terms to effect withholding part of each payment due to the contractor. Since KSA's claims exceed that of the government, it is unnecessary to invade the escrow account to make the government whole. We affirm the decision of the Court of Federal Claims that KSA is entitled, pursuant to the contract terms, to the principal of the escrow amount and the interest already earned on that principal.
 
 
 26
 KSA's claim to additional interest on the sum in escrow accruing as part of a CDA claim, however, must fail. The CDA authorizes interest "on amounts found due contractors on claims," 41 U.S.C. § 611 (1994), in order to compensate contractors for the burden of using their own money to continue performance of the contract in cases where the government's failure to pay is later found to have been in error, see S.Rep. No. 563, 95th Cong., 2d Sess. 32 (1978), reprinted in 1978 U.S.C.C.A.N. 5235, 5266. As KSA will recover the interest earned on the amount in the escrow account, the purpose for which the CDA interest would be awarded on the money in escrow has already been served. Accordingly, we agree with the Court of Federal Claims that KSA is not entitled to both CDA interest and escrow interest on the same money.
 
 
 27
 The Court of Federal Claims denied the government interest on its set-off claim because the government had not, as required by section 49 of the contract, made a written demand for payment of liquidated damages. Because the Court of Federal Claims is correct in its reading of that contractual requirement, we affirm the denial of interest to the government.
 
 
 28
 The Court of Federal Claims, however, netted the government's set-off claim out of the sum of KSA's contract claims to arrive at a sum on which KSA was awarded interest under the CDA. The Court of Federal Claims did not give any reason for reducing KSA's CDA claim before calculation of CDA interest. The netting therefore indirectly awards interest to the government on its set-off claim for liquidated damages. Accordingly, the Court of Federal Claims' award of CDA interest to KSA is modified to the extent that KSA is entitled to CDA interest calculated from its certification date of March 9, 1989 on its entire claim of $590,776.80.
 
 VI
 
 29
 The case is remanded to the Court of Federal Claims with instructions to: (1) award KSA CDA interest on $590,776.80, calculated from March 9, 1989; (2) award KSA its net claim of $121,776.80; and (3) release the escrow account in full to KSA.
 
 
 30
 No costs.