**David L. MENDENHALL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 73–89C.**

United States Claims Court.

March 28, 1990.

David L. Mendenhall, Kooskia, Idaho, pro se.

Steven A. Hemmat, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and Helene M. Goldberg, Asst. Director, Washington, D.C., for defendant.

## OPINION AND ORDER

ANDEWELT, Judge.

In this government contract action, plaintiff, David L. Mendenhall, appearing *pro se*, seeks $85,000 in damages relating to six contracts he entered with the United States Department of Agriculture (USDA) covering the harvesting of timber in specified areas of the Clearwater National Forest in Kamiah, Idaho. This action is presently before the court on defendant's motion to dismiss the complaint pursuant to RUSCC 12(b)(1). Defendant alleges that plaintiff has not satisfied the jurisdictional requirements for suit in this court under the Contract Disputes Act (CDA), 41 U.S.C. § 601 *et seq.*

### Facts

The six contracts in issue fall into two groups. The first two contracts, Nos. 909766 and 910129, cover the Austin Ridge area of the Clearwater National Forest (the Austin Ridge contracts). These contracts were entered on June 13 and July 28, 1986, respectively, and had termination dates of September 30 and December 31, 1986, respectively. The four later contracts, Nos. 910251, 910269, 910277, and 022784, cover portions of the Musselshell and Mox Creek areas of the Clearwater National Forest (the Musselshell and Mox Creek contracts). These contracts were entered on August 4, 1986, and had termination dates of December 31, 1986.

On September 15, 1986, prior to the termination date of any of the six contracts, defendant closed an access road to the area covered under the Austin Ridge contracts (the Austin Ridge access road). The Clearwater National Forest Travel Plan required that the road be closed from September 15 to June 15 for the protection of game during hunting season. Plaintiff objected to the road being closed because it would prevent him from harvesting the remainder of the timber covered under the Austin Ridge contracts. While the USDA refused plaintiff's request to keep the road open, it did agree to extend the termination dates of those two contracts by one year.

Thereafter, on November 5 and December 2, 1986, plaintiff sent to the contracting officer two letters which plaintiff alleges each qualify as a claim under the terms of the contracts and the CDA. In his November 5, 1986, letter, plaintiff requested that the contracting officer take specified action with respect to the "agreements or contracts now existing between myself and the forest service, that have to do with Mox Creek, or the Mussel-shell area." "In the first instance," plaintiff requested that the contracting officer cancel the contracts and return any bonds or deposits that plaintiff had paid on them. "In the second instance," plaintiff requested that performance on the contracts be continued "until we can reconcile our differences as to the final disposition satsfactory [sic] to both of

us." The only ground specifically set forth in the letter to support plaintiff's requests is that "changed conditions" had occurred with respect to the timber sales covered by the four Musselshell and Mox Creek contracts.[1]

In a November 18, 1986, response, the contracting officer denied both requests in plaintiff's November 5, 1986, letter and concluded that there was "no basis" for either cancellation or continuation of the four Musselshell and Mox Creek contracts. The contracting officer indicated that plaintiff did not satisfy "the normal requirements" for adjustment or extension of the contract terms in that he failed "to demonstrate that weather or physical conditions on the sale area beyond [his] control kept [him] from being able to perform on the contract, or that [he] made an effort at diligent performance by removing at least 75 percent of the sale volume." The contracting officer indicated that the USDA would reconsider its position if plaintiff could demonstrate that "changed conditions in the contract are of catastrophic extent," but that his November 5, 1986, letter "did not state what the changed conditions are or what evidence [plaintiff has] to substantiate [his] contention." The contracting officer acknowledged that there may have been a post-sale change in condition in one of the four contracts in that some volume of timber may be missing from the contract site. But the contracting officer stated:

In order to claim any loss on your part you must perform under the terms of the contract. We will be happy to supply you with information needed to prepare and submit a claim. You must be able to show through evidence the extent of your loss and it must be clearly described in the claim.

Turning to plaintiff's December 2, 1986, letter, plaintiff included as an enclosure copies of a petition and accompanying papers that he proposed to file in district court. In the letter plaintiff stated:

Notice is Hereby given in this letter and enclosure, that David L. Mendenhall, shall and will file said enclosure with the UNITED STATES DISTRICT COURT, unless said respondents willfully grant [the] relief ... requested.... No response within (48) Forty-Eight hours of receipt of this notice, will be construed as a response.

The proposed district court filing was entitled "PETITION FOR WRIT OF PROHIBITION IN THE PEREMPTORY." The petition sought a one-year extension of the four Musselshell and Mox Creek contracts or, in the event that such relief was not granted, it sought both reimbursement of fees and bonds paid and, in addition, monetary losses sustained by plaintiff as a result of the September 15, 1986, closing of the Austin Ridge access road. As to the alleged monetary losses, in an accompanying affidavit plaintiff explained, in effect, that he had intended to pay expenses on the four Musselshell and Mox Creek contracts with the money he would have earned by completing the Austin Ridge contracts. However, plaintiff contended, defendant's closing of the Austin Ridge access road prevented plaintiff from earning the necessary money and thereby prevented him from completing the work on the four Musselshell and Mox Creek contracts prior to their termination. Plaintiff indicated that prior to entry into the Musselshell and Mox Creek contracts he was not informed that the Austin Ridge access

---

1. The November 5, 1986, letter states in full:

As per your request, this letter is to satisfy your records on two instances in our association.

In the first instance, I would formally request of you as a representative of the Forest Service, that you would cancel any agreements or contracts now existing between myself and the forest service, that have to do with Mox creek, or the Mussel-shell area. As I purchased these sales at the same time and

paid what is I beleive [sic] a premium price for them, I do not think it is possible for me to continue to perform on these sales due to the changed conditions on them. I would respectfully request that would return any bonds or deposits I have paid you, and void our agreements.

In the second instance, I would request a continuance on these sales as to performance until we can reconcile our differences as to a final disposition satsfactory [sic] to both of us.

road would be closed and that when the road was closed, he already had paid for the timber that still remained on the Austin Ridge site. Plaintiff estimated that $500 in finished products and $4,000 in unfinished products remained on the site.

On December 29, 1986, plaintiff filed his petition in district court. The district court dismissed the action, and on October 3, 1988, the Court of Appeals for the Ninth Circuit transferred the suit to this court. In his amended complaint filed March 6, 1989, plaintiff contends that the government "seized" the four Musselshell and Mox Creek contracts for nonperformance and readvertised the sales, but barred plaintiff from again bidding on them. Plaintiff further alleges, in effect, that the defendant's failure to disclose the closing of the Austin Ridge access road prior to plaintiff's entry into the two Austin Ridge contracts constituted fraudulent inducement to enter those contracts, and that the closing of the Austin Ridge access road prior to the Austin Ridge contracts' termination dates constituted a breach of those contracts. As to damages, plaintiff alleges that the closing of the access road left him with insufficient funds to acquire the equipment necessary to work on the four later contracts. He seeks total damages of $85,000.[2]

## Analysis

### I.

The first issue to resolve is whether the instant cause of action must satisfy the jurisdictional prerequisites for a suit in this court under the CDA. Each contract unequivocally provides in Item 15(a) of the "Standard Provisions" that "[t]his contract is subject to the Contract Disputes Act of 1978. (Pub.L. 95–563)." Plaintiff contends, however, that Item 15(b) of the "Standard Provisions" should be interpret-

ed to create an exception for the contracts in issue. Item 15(b) provides: "Except as provided in the [CDA] all disputes arising under or relating to this contract shall be resolved in accordance with this clause." But in stating "[e]xcept as provided in the [CDA] ...," Item 15(b) does not suggest any exception to the requirements of the CDA. Rather, it simply indicates that to the extent the CDA contains dispute resolution procedures, those CDA procedures control. Since the CDA contains specific provisions covering court review of contracting officer decisions (41 U.S.C. §§ 605, 609), those procedures control in this action.[3]

### II.

The CDA contains two pertinent jurisdictional requirements. First, the contractor must have presented a written claim to the contracting officer (41 U.S.C. § 605(a)). Second, there must be either an actual contracting officer's decision on the claim or the contracting officer must have failed to issue a decision within the statutory time period, in which case the CDA provides that the contracting officer is deemed to have made a decision denying the claim (41 U.S.C. § 605(c)).

Thus, a contracting officer's refusal to take requested action is not always sufficient to support a suit in this court under the CDA—the refusal must be in response to a written document that constitutes a "claim." As summarized in *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 184, 645 F.2d 966, 971 (1981), *aff'd*, 230 Ct.Cl. 884 (1982), "[t]he [CDA] denies ... the contracting officer the authority to issue a decision at the instance of a contractor until a contract 'claim' in writing has been properly submitted to him for a decision. § 605(a). Absent this 'claim,' no 'decision' is possible—and, hence, no basis for

---

2. Pursuant to this court's order, plaintiff itemized his damage claim in two letters to defendant dated October 10 and November 8, 1989. Since plaintiff does not seek damages in excess of $50,000 with respect to any one of the six contracts in issue, defendant concedes that the claim certification requirement in 41 U.S.C. § 605 does not apply.

3. Indeed, Item 15(f) of the "Standard Provisions" presumes the applicability of the jurisdictional requirements of the CDA in stating that "[t]he Contracting Officer's decision shall be final *unless the contractor appeals or files a suit as provided in the [CDA]*." (Emphasis added.)

jurisdiction in this court." Accordingly, this court possesses jurisdiction herein only to the extent that plaintiff's November 5 or December 2, 1986, letter constitutes a "claim" under the CDA and there is an actual or deemed decision by the contracting officer on such claim.

### III.

■ Defendant contends that plaintiff's November 5, 1986, letter does not qualify as a CDA "claim" for numerous reasons, including plaintiff's alleged failure to request a "final" decision by the contracting officer, to identify clearly the contracts at issue, to recite the amount of monetary compensation desired, or to invoke the CDA. But defendant would require a level of formality and detail that simply is not required by the CDA.[4] In *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987), the Court of Appeals for the Federal Circuit articulated the standard for evaluating a purported CDA claim as follows:

> We know of no requirement in the [CDA] that a "claim" must be submitted in any particular form or use any particular wording. All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.

Plaintiff's November 5, 1986, letter satisfies this standard. While the letter does not use the legal term "final decision" or mention the CDA, it makes clear that plaintiff was requesting "[i]n the first instance" a decision by the contracting officer on plaintiff's request to cancel the contracts and to refund the money he had paid. As to the identity of the contracts in issue, the letter states that plaintiff seeks relief with respect to the contracts "that have to do with the Mox creek, or the Mussel-shell area." The four contracts entered on August 4, 1986, involved these areas, and the

contracting officer's November 18, 1986, response interpreted the letter as referring to those four contracts. As to the amount of money sought, plaintiff requested the return of "any bonds or deposits I have paid you," and the contracting officer was in a position easily to quantify that amount.

■ Defendant further alleges that plaintiff's November 5, 1986, letter fails to provide adequate notice of the basis of plaintiff's request apparently because it refers to "changed conditions" without further explanation. Plaintiff responds, in effect, that the contracting officer knew what plaintiff meant by the term "changed conditions" because plaintiff previously had indicated to the contracting officer that his concern was with the closing of the Austin Ridge access road. Defendant does not dispute that such discussions occurred or that the contracting officer in fact understood that plaintiff's reference to "changed conditions" involved, in part, the closing of the Austin Ridge access road. Rather, defendant contends, in effect, that as a matter of law, a written claim must stand on its own and that this court cannot rely upon extrinsic evidence in determining whether plaintiff's November 5, 1986, letter constitutes a claim.

But the CDA simply does not require that this court interpret plaintiff's November 5, 1986, letter in a vacuum. Plaintiff's letter was the product of continuing discussions between the parties. During these discussions, the contracting officer apparently received information as to the substance of plaintiff's concerns. The crucial question in this regard is whether plaintiff's November 5, 1986, letter was sufficient to give the contracting officer adequate notice of the basis of plaintiff's claim. Based on the evidence submitted by the parties, it appears that it was.

Thus, plaintiff's November 5, 1986, letter constitutes a claim under the four Mussel-shell and Mox Creek contracts seeking can-

---

4. The term "claim" is not defined in the CDA but in the "Standard Provisions" of each contract (Item 15(c)(i)), the term is defined as follows: "As used herein, 'claim' means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract."

cellation of those contracts and the refund of previous payments and bonds. The contracting officer's November 18, 1986, response constitutes an unequivocal denial of plaintiff's claim in that the contracting officer refused to provide any of the relief requested. Hence, the two pertinent jurisdictional prerequisites for suit in this court are satisfied—a contractor claim and a contracting officer decision on that claim.

### IV.

The same conclusion is not warranted with respect to plaintiff's December 2, 1986, letter. Both pertinent jurisdictional prerequisites are missing—the letter does not constitute a claim, and, in any event, there was no actual or deemed decision by the contracting officer.

█ First, as to the claim requirement, the contracting officer did not interpret plaintiff's December 2, 1986, letter as a claim to be handled pursuant to the contracts and CDA dispute procedures, and reasonably should not have so interpreted it. Plaintiff's letter, in essence, was simply a threat that if plaintiff was not awarded the relief requested in his attached complaint, he would file suit in district court. While the CDA grants a contracting officer 60 days to consider claims under $50,000, plaintiff gave defendant only two days to respond to his letter. Plaintiff stated that "[n]o response within (48) Forty–Eight hours of receipt of this notice, will be construed as a response." This approach is fundamentally inconsistent with plaintiff intending his letter to be considered as a "claim" and resolved pursuant to the applicable dispute resolution procedures.

█ Second, even assuming that plaintiff's December 2, 1986, letter constituted a claim, this court would lack jurisdiction herein because the contracting officer never issued an actual decision on that claim. As to a deemed decision, the CDA permits a contracting officer a minimum of 60 days within which to respond to a claim, and, therefore, there can be no "deemed" decision prior to 60 days from the date of the claim. Since plaintiff filed the instant action within 60 days from his December 2,

1986, letter, this court lacked jurisdiction over plaintiff's claim when this suit was filed. The issue therefore becomes whether the passage of time after plaintiff filed suit can cure this jurisdictional defect, *i.e.*, whether plaintiff's premature suit would ripen into a viable suit after 60 days passed from the date of his claim. This court considered this precise issue in *Claude E. Atkins Enterprises v. United States*, 15 Cl.Ct. 644, 646 (1988), and concluded that this jurisdictional defect cannot be cured by the passage of time after the filing of an action. For the reasons set forth in that opinion, this court agrees with the *Atkins* approach.

### V.

For the reasons set forth above, the only claim over which this court may have jurisdiction is plaintiff's November 5, 1986, letter filed under the Musselshell and Mox Creek contracts in which plaintiff sought the cancellation of those four contracts and return of previous payments and bonds. However, it does not appear that plaintiff's amended complaint is directed at securing relief under those four contracts. Rather, the complaint appears to be directed at a violation of the two Austin Ridge contracts. Plaintiff appears to allege that the closing of the Austin Ridge access road violated the Austin Ridge contracts and that the damages resulting from that violation included plaintiff's inability to complete performance on the four later contracts. If this is plaintiff's theory, this court lacks jurisdiction over his complaint because plaintiff never presented a claim to the contracting officer under the two Austin Ridge contracts. As described above, plaintiff's November 5, 1986, letter presented a claim and sought relief under the four Musselshell and Mox Creek contracts. It never mentioned the Austin Ridge contracts and was not interpreted, and reasonably could not be interpreted, as presenting a claim under those contracts.

On the other hand, the amended complaint is arguably ambiguous. Plaintiff, appearing *pro se*, may intend the complaint to be directed at a violation of the four

Musselshell and Mox Creek contracts. As discussed above, since plaintiff presented a claim under those contracts and the contracting officer issued a decision denying that claim, this court would have jurisdiction to review the contracting officer's decision. But, while the jurisdictional requirement would be satisfied, it is not apparent that plaintiff could prevail on the merits of such a claim. The Austin Ridge access road apparently was not needed for access to the Musselshell and Mox Creek sites. In this setting, it is not apparent that defendant, having decided to close the Austin Ridge Road, was obliged under the terms of the Musselshell and Mox Creek contracts to cancel or extend those contracts.

## VI.

Some additional comments by the court may be helpful to the parties in considering further action. First, the sole damages sought in plaintiff's November 5, 1986, letter is the return of bonds and deposits plaintiff had paid on the Musselshell and Mox Creek contracts. When a contractor brings an action in this court to challenge a contracting officer's denial of a claim, the contractor may seek damages in excess of the damages requested in the claim only where (1) there was no change in the fundamental character of the claim and (2) the increase in damages is reasonably based on further information. *Contract Cleaning*, 811 F.2d at 591–92. But, in any event, a contractor is not entitled to damages that are not foreseeable at the time of the contract because they are too remote or consequential. *See, e.g., Olin Jones Sands Co. v. United States*, 225 Ct.Cl. 741, 742–44 (1980); *Northern Helex Co. v. United States*, 207 Ct.Cl. 862, 886–88, 524 F.2d 707, 720–21 (1975), *cert. denied*, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976); *William Green Constr. Co. v. United States*, 201 Ct.Cl. 616, 626, 477 F.2d 930, 936 (1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974). Under this standard, at a minimum plaintiff's requests for $30,000 in damages based on "fear of conducting business with the U.S. D.A." and $10,000 for "lost opportunities from the hardship incurred by U.S.D.A.

actions" would not be recoverable because such damages are remote and consequential.

Next, contrary to plaintiff's contention, *pro se* litigants are not entitled to an award of attorney's fees. *Naekel v. Department of Transportation*, 845 F.2d 976, 980–81 (Fed.Cir.1988). Finally, plaintiff's contention that he is entitled to a flat ten percent interest on any damages is simply incorrect. The amount of interest owed to a contractor who prevails in a CDA suit in this court is established in 41 U.S.C. § 611.

### Conclusion

In view of the above, the complaint shall be dismissed without prejudice, except to the extent that it challenges the contracting officer's November 18, 1986, decision denying plaintiff's November 5, 1986, claim under the Musselshell and Mox Creek contracts. On or before April 26, 1990, plaintiff shall file a "Statement of Intent" in which he describes precisely the grounds upon which he seeks relief herein. Plaintiff shall specify whether he is alleging exclusively that defendant violated the provisions of the Austin Ridge contracts or whether he is alleging, in addition, a violation of the duties owed under the Musselshell and Mox Creek contracts, *i.e.*, whether he is also alleging that upon closing the Austin Ridge access road, defendant was obliged under the Musselshell and Mox Creek contracts to cancel or extend those contracts. If plaintiff is taking the latter position, he shall explain the basis for his position and specify each contract provision that he contends obliged defendant to cancel or extend the four contracts. On or before May 14, 1990, defendant may file a response to plaintiff's statement.

IT IS SO ORDERED.