The BOEING COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–25C.

United States Claims Court.

Reissued June 9, 1992.[1]

James J. Gallagher, Los Angeles, Cal., for plaintiff.

Martha H. DeGraff, with whom were Asst. Atty. Gen. Stuart M. Gerson and David M. Cohen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This is an action under the Contract Disputes Act ("CDA").[2] The Government has moved to dismiss the complaint on the ground that there is a failure of subject matter jurisdiction. For the reasons that follow, the motion is denied.

### FACTUAL BACKGROUND

On February 26, 1985, the Electronic Systems Division of the United States Air Force awarded contract number F41689–85–C–0528 to plaintiff. This is one of three contracts awarded to Boeing in connection with the Peace Shield Program to provide an air defense system to the Kingdom of Saudi Arabia. Contract number F41689–85–C–0528 is known as the Air Training Command Contract ("the ATC Contract"), and required Boeing to develop a plan for system training in Seattle, Washington for Royal Saudi Air Force personnel.

On January 14, 1991, the Government terminated the ATC contract in its entirety for default. The termination was based in part on the alleged default of Boeing in the related Prime Mission Equipment contract, also awarded under the Peace Shield Program. Over the space of eleven months after termination, Boeing submitted seven claims to the two Contracting Officers.

*First Claim*

Boeing was required to furnish fifteen computers by one line item of the contract. Boeing invoiced for the machines based on approval of the requisite form DD 250 and on delivery and acceptance. On April 18, 1991, the Termination Contracting Officer

---

1. By order of May 20, 1992, the court granted in part the Government's motion to reconsider the opinion of April 23, 1992. For reasons reflected in the order, the changes discussed are incorporated herein.

2. 41 U.S.C. §§ 601–613 (1988).

("TCO") notified Boeing that there would be no more payments on the ATC contract, including payment for the computers, because of the termination for default. On August 5, 1991, Boeing submitted an uncertified claim in the amount of $45,777.20, the cost of the computers. It requested a final decision on the claim.

The Procuring Contracting Officer ("PCO") responded to the claim by memorandum dated October 3, 1991. He recites that due to the complexity generated by the multiple terminations for default, a decision could not be issued at that time. Instead, "a final decision should be rendered [by December 3, 1991]."

On November 13, 1991, Boeing included the claim for computer payment in its termination for convenience costs claim ("TFC claim"). In response to that element of the TFC claim, the PCO wrote back on November 22, 1991 that a final decision could not be rendered at that time, but that a final decision "should be rendered by 31 Jan 92." On January 13, 1992, the PCO issued a final decision granting the computer claim in full. The decision cited the acceptance of the computers and approval of the form DD 250. Four days later the PCO voided this decision, saying that because of the filing of the pending action on January 13, his authority to deal with the claim had been removed.

In the interim, the TCO had written Boeing with respect to the TFC claim. The letter, dated January 10, 1992, recites that "I will endeavor to respond to you on each [of your submissions] by 13 Mar 92, or if unable to respond by that time, I will advise you by 13 Mar 92 when I will respond."

*Second Claim*

Boeing submitted a second claim on August 5, 1991, pursuant to Contract Line Items 0003AD, and 0004AD. This claim was in the amount of $382,474, and covered services rendered by Boeing and accepted by the Government on April 12, 1991. The claim was certified and requested a final decision.

By the same October 3, 1991 letter referenced above, the PCO informed Boeing that the Government could not render a decision then, but indicated one would be forthcoming by December 3, 1991. The letter of November 22 mentioned above also refers to this claim, thus plaintiff was later told the decision "should be rendered by 31 Jan 92." In the interim, Boeing's TFC submission reasserted this claim on November 13. On January 10 the response to the TFC claim was received. On January 17, 1992, the PCO wrote Boeing that a final ruling on the claim would not be issued with respect to the two contract line items.

*Third Claim*

On November 5, 1991, Boeing submitted an equitable adjustment claim in the amount of $863,079 for expenses associated with Contract Change Proposal 0001. The claim was certified by the President of Boeing's Defense and Space Group and requested a final decision. On January 10, 1992, the TCO responded as mentioned above. In another January 17 letter, the TCO informed Boeing that she was without authority to proceed on the claim due to the filing of this action.

*Fourth, Fifth and Sixth Claims*

On November 13, 1991, Boeing submitted three additional claims for work done pursuant to the ATC Contract. The fourth claim ($256,968) was for work in connection with Contract Change Proposal 0008. The fifth claim ($55,490) was for work in connection with Technical Change Proposal 0135. The sixth claim ($127,601) was for work in connection with modifications to the CONUS Training Plan. Each of these claims was certified by the President of Boeing's Defense and Space Group and requested a final decision. The TCO responded to these claims through her January 10 response to the TFC claim.

*Termination for Convenience Claim*

On November 13, 1991 Boeing submitted its TFC claim. It was also certified by the President of the Defense and Space Group, and requested a final decision. In addition to asserting costs incident to termination, the TFC claim reasserted all six previous claims. On January 10, 1992, the TCO sent

the previously mentioned letter stating that she could not respond within 60 days.

On January 13, 1992, Boeing filed the complaint to begin the instant action.

## DISCUSSION

The Government contends that the complaint was prematurely filed. It argues that the jurisdictional prerequisite to a complaint here, a final decision of the Contracting Officer, does not exist. It is plain enough that this court's review is predicated upon either a final decision of a contracting officer or the failure of a contracting officer to act timely on a proper claim. *Paragon Energy Corp. v. United States,* 645 F.2d 966, 227 Ct.Cl. 176, 181 (1981); 41 U.S.C. §§ 605(c), 609(a)(1). It is also clear from the facts that no final decision was rendered. If the complaint is jurisdictionally sound, it has to be because the claims were deemed denied.

For claims of less than $50,000, if the contractor asks for a decision within sixty days, the contracting officer is required to furnish one within that period. 41 U.S.C. § 605(c)(1). As to certified claims in excess of $50,000 and for which the contractor asks for a final decision within sixty days, the contracting officer has more flexibility. She can either issue the decision, or "notify the contractor of the time within which a decision will be issued." 41 U.S.C. 605(c)(2)(B). If a decision is not issued, or a firm date not set pursuant to subparagraph B, such failure "will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim...." 41 U.S.C. § 605(c)(5).

The Government contends that the first six administrative claims were subsumed into the November 13 TFC claim; that those earlier claims have no independent existence. It then argues that the January 10 letter, a response to the TFC claim, was sufficient to meet the requirements of § 605(c)(2)(B). It is unnecessary, at this juncture of the litigation, for the court to resolve whether there are seven claims or one. It is sufficient to note that the November 13 TFC claim includes all the ele-

ments of the earlier claims. There is thus at least one claim that underlies the recitations of the complaint. Even if the Government's analysis is correct, more than sixty days had passed before Boeing filed its complaint on January 13, 1992. Therefore, as to the limited question of whether there has been a deemed denial of a claim, it is enough to note that the complaint postdates even the TFC by more than sixty days. As discussed below, the tolling provision was not properly invoked as to the latter claim.

The January 10, 1992 letter, while no doubt sincere and perhaps accurate, was inadequate to trigger the potential tolling. It concluded, "I am reviewing all of these submissions but am not in a position to respond to your [claims] within the 60–day period you requested. I will endeavor to respond to you on each of them by 13 Mar 92, or if unable to respond by that time, I will advise you by 13 Mar 92 when I will respond." This language does not state when the TCO's decision will be issued. It does not obligate the TCO to make her decision by March 13. Fixing a date by which some other later date will be identified does not afford the contractor, within sixty days of filing the claim, a date for issuance of a final decision. The latter is what is called for by the statute. The Government's assertion in its briefing that "within 60 days of receipt of Boeing's claim, the termination contracting officer chose to notify Boeing that she would issue a final decision by March 13, 1992" is simply inaccurate.

That a fixed date is required is clear from the tolling provision. If the claim is substantial and will require a long period of time to address, then the contracting officer's only option is to fix a date far enough into the future to assure a complete evaluation. If the contractor is unhappy with the prospect of a lengthy delay, it has the option of invoking the assistance of a board of contract appeals to speed up the process. 41 U.S.C. § 605(c)(4). It is apparent that the two Contracting Officers had legal assistance throughout the termi-

nation process. It would have been a simple matter to comply with the statute.

The importance of having fixed milestones in triggering a right of appeal has been recognized before. *See Pathman Construction Company, Inc. v. United States,* 817 F.2d 1573, 1578 (Fed.Cir.1987). If a contracting officer is able to keep the administrative process alive with ambiguous assurances that a final decision will be issued some time in the future, the whole issue of whether the tolling provision was invoked would create a new source of useless litigation.

The Government's lengthy discussion in its briefs about the importance of the administrative process created by the CDA is interesting, accurate, and irrelevant. If the court accepted the premise behind the Government's motion, it would be rewriting the statute.

The motion to dismiss is denied. The defendant's obligation to answer is deferred pending further order. The parties are directed to confer and file a joint status report on or before June 25, 1992 reflecting their views on the advisability or parameters of a stay pursuant to 41 U.S.C. § 605(c)(5).