**ORBAS & ASSOCIATES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–254C.**

United States Claims Court.

July 16, 1992.

William L. Bruckner, San Diego, Cal., for plaintiff.

Robert Salcido, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and Sharon Y. Eubanks, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This action, brought pursuant to the Contract Disputes Act of 1978,[1] is before the court on the government's motion to dismiss for lack of subject matter jurisdiction.

---

**1.** 41 U.S.C. §§ 601–613 (1988).

For the reasons that follow, the motion is denied.

## FACTUAL BACKGROUND [2]

Plaintiff, Orbas & Associates, entered into a contract with the Navy to perform certain construction work at the Navy Exchange at the Pacific Missile Test Center, Point Mugu, California. The contract was competitively let. Orbas submitted the low bid of $55,980.00. Performance commenced November 18, 1988. The complaint alleges that plaintiff encountered difficulty immediately, due to misleading contract documents, impossible terms, and poor assistance and direction from Navy personnel. The complaint also alleges that Orbas notified the Navy that it was incurring additional costs, delays, and inefficiencies. On May 11, 1989, plaintiff was terminated for alleged default.

On January 15, 1990, Orbas submitted a claim entitled, "Termination for Default Proposal." This submission includes twenty pages of narrative and a number of attachments. The second paragraph is an overture:

> This proposal will demonstrate that during the period of the contract up to and including the receipt of the Termination for Default, Orbas [was] performing in accordance with the terms of the contract and was therefore not technically in default. Further, any delay in completing the work was due to unforeseen causes beyond the control and without the fault or negligence of the Orbas, and entirely a result of actions or inactions of the government in either its sovereign or contractual capacity. Lastly, this proposal provides an estimate of the termination costs, requests withdrawal of the Navy's Termination for Default decision and proposes the Navy make an equitable adjustment to the contract in the amount of $198,242.00.

Orbas' claim included a request that the termination for default be converted into a termination for convenience.

On February 28, 1990, the Deputy Resident Officer In Charge of Construction informed Orbas that its claim was incomplete and therefore the government could not finish its evaluation until Orbas submitted the necessary information. By letter dated March 1, 1990, the Contracting Officer ("CO") also informed Orbas that its claim could not be completed until the supplemental information was forwarded to the government. This letter stated that "[i]n the event you have already or soon will provide the requisite information with appropriate certifications, you should not expect a final decision prior to 30 June 1990 due to the complexity of the claims already under review."

Orbas responded to the CO by letter dated March 13, 1990. In this letter Orbas denied that further information was needed to evaluate its claim. On March 23, 1990, Orbas filed this action, contending that the court had jurisdiction pursuant to 41 U.S.C. § 609(a)(1) (1988). Thereafter, on May 4, 1990, the CO issued a final decision on Orbas' January 15, 1990 claim, converting the termination for default into a termination for convenience.

## DISCUSSION

Does the court have jurisdiction pursuant to the Contract Disputes Act ("CDA")? The relevant language of the CDA for the purposes of this discussion is found within § 605(c). In pertinent part, this subsection provides:

> (2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $50,000—
>
> (A) issue a decision; or
>
> (B) notify the contractor of the time within which a decision will be issued.
>
> . . . .
>
> (5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the

**2.** The facts relevant to decide the motion are taken from the parties' submissions and are undisputed.

commencement of the appeal or suit on the claim as otherwise provided in this chapter....

41 U.S.C. § 605(c).

■ It is well settled that the "linchpin" for appealing claims and obtaining direct access to this court under the CDA is the CO's final decision. 41 U.S.C. §§ 605(c), 609(a)(1); *Continental Heller Constr. v. United States*, 21 Cl.Ct. 471, 473 (1990); *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 177, 645 F.2d 966, 967 (1981). Absent an actual or "deemed" final decision, this court cannot exercise jurisdiction over the controversy. *Boeing Co. v. United States*, 26 Cl.Ct. 257 at 259, (1992); *Mendenhall v. United States*, 20 Cl.Ct. 78, 82 (1990); *Claude E. Atkins Enters. v. United States*, 15 Cl.Ct. 644, 646 (1988).

Section 605(c)(2) thus "places the burden on the government contracting officer to issue a final decision on a claim within 60 days or notify the contractor when the decision will be issued." *Vemo Co. v. United States*, 9 Cl.Ct. 217, 222 (1985). Section 605(c)(5) of the CDA provides that a "deemed decision" can result from the CO's failure to issue a decision within the time period set forth in the other subsections.

■ According to the government, dismissal is appropriate because there was neither a final decision nor a deemed final decision by the CO. The decision of May 4, 1990, it asserts, was a nullity because the complaint had already been filed. The March 1, 1990 letter was also sufficient under § 605(c)(2)(B) to notify the contractor of a time "within which a decision will be issued." In response to this argument, Orbas contends that the CO failed to comply with the express requirements of § 605(c)(2)(A) and (c)(2)(B). It argues that within sixty days of receipt of the claim, the CO neither issued a final decision nor notified the contractor of the time within which a decision would be issued. As a result, the claim was "deemed denied" pursuant to § 605(c)(5).

Since there was no express final decision prior to the initiation of this action, the question becomes whether, within sixty days of the receipt of the claim, the CO notified the contractor of the time within which a decision would be issued. If he did, then Orbas has prematurely filed this action, and the subsequent issuance of a final decision cannot cure the defect. If he did not, then the CO failed to satisfy § 605(c)(2)(B), and this failure amounted to a "deemed decision" denying the claim.

The answer must be found in the CO's March 1, 1990 letter to Orbas, which stated: "[i]n the event [that] you have already or soon will provide the requisite information with appropriate certifications, you should not expect a final decision prior to 30 June 1990 due to the complexity of the claims already under review." According to Orbas, a fair paraphrase of this letter is that the final decision will be issued sometime after June 29, 1990. If this is correct, then the letter did not satisfy § 605(c)(2)(B), because the time within which a decision would be issued was open-ended. The defendant contends that the letter should be read as a notification that the decision would be issued on June 30, 1990.

Section 605(c)(2)(B) was discussed by the Veterans Appeals Board in *Appeal of Robert Augustine & Sons, Inc.*, VABCA No. 3079, 90–1 B.C.A. (CCH) ¶ 22,506, 1989 WL 146843 (1989):

> [t]he phrase ... "time within which a decision will be issued" ... means something *more* than simply stating to the contractor that the CO cannot issue a decision (even "as expeditiously as possible") until after an audit has been conducted....
>
> ... Even when a contracting officer is uncertain as to the precise time which will be required to conduct an audit and to then issue a final decision, he/she must still make a good faith estimate of "the *time within which* a decision will be issued." Failure to state that information (or to issue a decision) within the requisite sixty days will trigger Section [605(c)(5)], authorizing the contractor to file an appeal to the appropriate board or to the Claims Court.

*Id.* at 112,972 (citation omitted).

Subsequently, in *Appeal of Schwartz*, VABCA No. 2975, 90–1 B.C.A. (CCH) ¶ 22,-

518, 1989 WL 156822 (1989), the same board expanded upon this interpretation:

> [E]ven where it is uncertain as to the precise time which will be required to conduct an audit and to then issue a final decision, the Contracting Officer "must still make a good faith estimate of 'the *time within which* a decision will be issued.'"
>
> ... Such an estimate need only [be] "reasonable" and could ... [take] "into account such factors as the size and complexity of the claim [and] the adequacy of the information in support of the claim provided by the contractor." Moreover, the estimated date could be subject to revision in light of actual experience, provided of course that it was reasonable.

*Id.* at 113,014. To the same effect is our more recent decision in *Boeing v. United States,* 26 Cl.Ct. 257 at 259–60 (1992).

The date fixed by the CO can thus be a fair estimate. For example, it would have been appropriate to recite, "I expect to issue a final decision on June 30." However, it cannot be an indefinite, open-ended date, sometime in the future. If the phrase "within" puts any constraints on the CO, it must mean that the contractor is to be informed of the outside date by which it is estimated that a decision will be issued. The contractor must be able to look at a calendar and know when the decision is late.

At oral argument, the government contended that the language used by the CO clearly conveyed his intention to issue a final decision on 30 June 1990. The court cannot share the government's unorthodox construction of this language. The only information that the letter unequivocally conveyed to Orbas was that it should not expect a decision prior to June 30. In the court's view, the least strained reading of this language is that a final decision would be rendered sometime after June 29, 1990. The CO failed to impose an outside limit on the estimated date for decision. The letter thus provided Orbas with neither a specific date, nor a good-faith estimate of a time within which a final decision would be issued. This is inadequate under § 605(c)(2)(B). If it can be said that the letter of March 1 is susceptible of another reading, the court would simply observe that in this context the CO bears the responsibility of needless ambiguities. It is therefore unnecessary to address plaintiff's other arguments.[3]

The government's motion to dismiss is denied. The action is remanded to the CO pursuant to 41 U.S.C. § 605(c)(5). The CO is instructed to issue a final decision on or before October 19, 1992.

---

**3.** The CO's March 1, 1990 letter also introduced another element of uncertainty by conditioning the final decision date on plaintiff's furnishing information, a request which plaintiff felt to be unnecessary. The government conceded at oral argument that plaintiff's submission of 15 January 1990 was a claim. By definition, it was therefore a "clear and unequivocal statement" adequate to give "notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987). Although the CO may ask for information to supplement a claim, in the absence of some understanding with the plaintiff that it will defer filing a complaint, the CO must still comply with § 605(c)(2).