SUN EAGLE CORP., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–302C.

United States Claims Court.

June 20, 1991.

Order on Reconsideration Aug. 7, 1991.

Deborah E. Solliday, Phoenix, Ariz., for plaintiff. Carolyn Kaluzniacki, Jennings, Kepner & Haug, of counsel.

Christopher R. Yukins, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Ann L. Springer on the briefs and at argument. Major Fred Kennedy, U.S. Army, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court on two motions by defendant to dismiss the complaint for lack of jurisdiction. Two issues are presented for consideration. The first is whether a contractor submitted to the contracting officer a claim, such that the contractor's filing in the Claims Court over a year after the issuance of a final decision on the purported claim renders its suit untimely. The second issue, raised orally during argument on the first, is whether a contractor's claim that the Government caused delay, although a time extension is not sought, transforms government assessment of liquidated damages into a contractor claim, so that due to the amount of the total claim, certification is a jurisdictional prerequisite.

## FACTS

The following facts are undisputed. On April 21, 1988, the Army Directorate of Contracting (the "Army"), under authority delegated to it by the Small Business Administration (the "SBA"), issued Solicitation No. DAEA18–88–R–0037 (the "solicitation") for paint, labor, material, and equipment to construct a helicopter hangar at Libby Army Airfield, Fort Huachuca, Arizona. After negotiations Sun Eagle Corporation ("plaintiff") submitted a revised proposal price of $153,808.34 on May 18, 1988, which contemplated that the hangar would be a Butler steel building. The parties entered into Contract No. DAEA18–88–C–0019 on June 7, 1988. Plaintiff submitted drawings for the Butler building and for its foundation on June 24, 1988. Three days later plaintiff acknowledged receipt of the notice to proceed, which allowed plaintiff 120 days to construct the building.

In a memorandum for record dated July 18, 1988, Contract Specialist Lida Panagakos memorialized the steps by which the Directorate of Engineering and Housing (the "DEH") reviewed and rejected plaintiff's initial building and foundation submittal. Specifically, Ms. Panagakos noted that DEH found deficiencies regarding the proposed Butler building's resistance to wind velocity, as well as problems with the compressive strength and seismic zone design of the concrete. Martin Alvarez, plaintiff's President,[1] disagreed with the assessment of DEH and stated that the building proposed by plaintiff already had been accept-

---

1. As president, Mr. Alvarez signed all of plain-    tiff's correspondence at issue in this suit.

ed. DEH contacted Butler directly in an attempt to rectify the problem.

On July 25, 1988, plaintiff sent a letter to Contracting Officer Georgia A. Lawrence complaining about, among other things, the Army's reluctance to approve promptly the Butler building submittal. In non-specific terms plaintiff requested compensation for increased overhead and demanded an extension of time.

By letter of July 28, 1988, due to the alleged necessity to install a quantity of concrete for the foundation's footings and stems beyond the requirements of the contract, plaintiff specifically requested additional overhead costs of $6,295.70 and a contract extension of five days.

The record at this point has a time gap. Defendant explained at argument that the DEH returned plaintiff's first footing submittals. On August 2, 1988, Contracting Officer Lawrence approved plaintiff's submittal for the foundation, paint, and building.[2] In a letter dated August 8, 1988, responding to plaintiff's July 25, 1988 letter, Ms. Lawrence stated her position that the Army's approval on August 2 of plaintiff's proposal was within the contract's 20–day time limit for approval or disapproval by the Army of submittals. Ms. Lawrence stated that once a submittal is rejected, the 20–day period begins to run anew.

By letter of August 19, 1988, Contracting Officer Lawrence questioned the escalated cost asserted for footings and stems. She requested negotiations and a "re-proposal" on this point, but did allow plaintiff's request for increased costs associated with profit, overhead, bonds, and taxes. On September 14, 1988, plaintiff submitted its revised cost proposal in which it reduced its requested amount to $3,842.04.

On November 9, 1988, the Army made its final inspection of the project. In a letter to plaintiff dated November 17, 1988, Contracting Officer Lawrence concluded that the building was not acceptable for government occupancy or use. She stated that the project did not pass inspection due to below-standard workmanship and numerous deficiencies in the alarm system, sliding doors, lock sets, weather seals, and other items. Ms. Lawrence assessed liquidated damages at $200.00 per day beginning on October 25, 1988, and at $300.00 per day from November 25 forward until completion and acceptance of all work.

In a letter dated November 28, 1988, plaintiff: 1) disputed the Army's assessment of liquidated damages; 2) asserted that the Army modified the contract to allow plaintiff to supply a Butler building only; 3) claimed that several items listed in the November 17 letter referenced work outside the scope of the contract; 4) demanded payment for work that it performed outside of the contract; and 5) requested a meeting with Contracting Officer Lawrence and her superiors to "finalize" contract performance and payment. Ms. Lawrence responded by letter of the same date and requested that plaintiff specify which items were inapplicable to the contract. She stated that, after review of the information, her office would arrange a meeting, if required.

Plaintiff answered on November 29, 1988. Initially, this letter set out the following "facts" regarding negotiations between the Army and plaintiff on the project:

The first claim made by Sun Eagle Corporation is for the additional time required by Sun Eagle Corporation to verify color, structural integrity including redesigned footings and other items which were already approved at the time of the negotiations and reaffirmed by the modification in writing. Sun Eagle Corporation requests an additional 30 days of delays on the part of the Government for these extraneous approvals. Sun Eagle Corporation will make a further claim later for the additional labor, materials and equipment for the re-designed footings and stems.

---

2. Plaintiff notified SBA in May of that year that delivery of the Butler building would take six to eight weeks.

We have included our original claim to the Government dated July 28, 1988, in the amount of $6,295.70 for this additional work. The Government did not have a specification for this stem wall and later forced Sun Eagle Corporation to invest an additional $2,000.00+ in labor and materials cost in order that the stem wall be repaired to the satisfaction of the Government.

Next, plaintiff's November 29 letter discussed the history of the problems with horizontal sliding doors referred to in the contracting officer's letter of November 17. Plaintiff also disputed a requirement to provide and install gutters. Plaintiff continued:

Our last claim to the Government is for extended overhead. Sun Eagle Corporation has incurred extended overhead costs for the duration of this contract due to the Government's failure to address the original negotiations and convey the negotiations, the contract, the modification and Sun Eagle Corporation's original proposal. With this in mind Sun Eagle Corporation hereby requests extended overhead costs of $275.00 per day for an additional 45 days. The total amount of our claim for extended overhead is $12,275.00.

If the Government had approved all of the items as per the negotiations, the modification and Sun Eagle Corporation's proposal, then the project would have been completed more than 45 days prior to this date. Our total claim including additional concrete footings and stems, repair work on stems for un-prescribed stems and for additional overhead is $20,670.70. We also request and should be granted an extension to the contract of a minimum of 60 days. Please call me in order that we may discuss this situation and arrange for a meeting with all parties included.[3]

By letter of December 28, 1988, Ms. Lawrence denied all of plaintiff's requests. Contracting Officer Lawrence labelled this

letter a "final decision" pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988) (the "CDA").

On January 4, 1989, according to an internal memorandum authored by Contract Specialist Panagakos, a "meeting/telephone conversation" took place in which the parties attempted to resolve the dispute. According to Ms. Panagakos, plaintiff and the Army vigorously disputed whether the contract called for the Butler building to meet precise factory specifications or whether the Army waived those specifications. As the meeting progressed, as recorded by Ms. Panagakos, the Army stated that it still intended to assess liquidated damages, and plaintiff admitted its mistake concerning its proposed amount of concrete. In the words of Contract Specialist Panagakos, the "[m]eeting was terminated with ... [plaintiff] reluctantly agreeing to our statements. It was assumed that no further claim will be forthcoming and as soon [as] all deficiencies are corrected, modification will be issued for liquidated damages."

On February 9, 1989, plaintiff wrote Ms. Lawrence, asserting that it complied with the extra work requirements in her December 28, 1988 letter. Plaintiff claimed that it delivered a final voucher on December 14, 1988, and requested full payment in the amount of $44,439.40. Additionally, based on plaintiff's compliance with the contract and on the Army's acceptance of the building on January 18, 1989, plaintiff asked Ms. Lawrence to waive all damages.

No record of any further contact between the parties themselves exists, save for Contract Modification No. P00002 issued on April 17, 1989, signed by Contracting Officer Frank Abernathy, Mr. Alvarez for plaintiff, and a contracting officer of the SBA. This modification provided reimbursement to plaintiff in the amount of $3,852.02, principally for the concrete error noted above.

---

**3.** As to the $12,275.00 for extended overhead and the $8,295.70 for the addition of and correction to the stem wall, plaintiff asserts that "[t]hese two items have not been included in ...

[plaintiff's] complaint and are therefore not at issue" in this litigation. Plf's Br. filed Feb. 8, 1991, at 10.

On October 23, 1989, counsel for plaintiff wrote to Contracting Officer Abernathy disputing the liquidated damages, charging the Army with delay in approving submittals, and identifying the Army's requested additional work as the cause for delay. The letter stated:

Because of the conduct of the Government, in causing Sun Eagle's work on the project to continue past the contract completion date, Sun Eagle is entitled to payment for any resulting extended overhead costs. On November 29, 1988, Sun Eagle requested payment for extended overhead in the total amount of $12,-275.00, for extended overhead costs of $275.00 per day for 45 days. In addition to extended overhead associated with the 45 days, Sun Eagle is entitled to payment for extended overhead for the remaining days of delay by the Government, which amounts to at least 81 days of delay at a cost of $22,275.00. Sun Eagle has yet to receive any payment for extended overhead.

Sun Eagle also requested reimbursement of costs for additional work in connection with the redesign of footings and stems in the amount of $6,295.70, and additional cost and repair of the stems in the amount of $2,000.00, for which Sun Eagle has not been paid. As a further added expense, Sun Eagle incurred $2,046.00 in connection with the furnishing and installation of gutters and downspouts, which were not part of the original contract. Sun Eagle also has not been reimbursed for this addition to the contract. A copy of the invoice sent to Sun Eagle for the gutters and downspouts is attached hereto. Thus, in addition to the $18,400.00 wrongfully deducted, Sun Eagle is entitled to reimbursement for all extra costs resulting from the conduct of the Government. Sun Eagle therefore demands payment of $44,891.70 plus interest for extended overhead and changes to the contract.

By this letter we are putting the Contracting Officer on notice of Sun Eagle's claim for payment in the amount of $63,-291.90 [4] plus interest, for the amount remaining on invoice No. 6, and for extended overhead and extra costs associated with the additional work demanded by the Government, which was not required by the contract specifications.

We request your immediate review of this claim, and ask that the Contracting Officer render a prompt, final decision in writing if this claim is not paid in full.

Contracting Officer Abernathy responded in a letter dated November 20, 1989, in which he reiterated the Army's position that plaintiff received a final decision dated December 28, 1988, foreclosing future disputes regarding all issues covered therein. Mr. Abernathy also explained how his office arrived at its computation of liquidated damages; he did not discuss any other specifics raised in plaintiff's October 23 correspondence.

On April 6, 1990, plaintiff filed its complaint in this court seeking: 1) extended overhead of $275.00 per day for 94 days of delay; 2) modifications and extras to the contract of $2,046.00 for materials and an unspecified amount for labor; 3) liquidated damages in the amount of $18,400.00 wrongfully withheld by the Army; 4) costs, attorneys' fees, and interest; and 5) a declaratory judgment that plaintiff complied with the one-year time limit for filing its action.

## DISCUSSION

Defendant requests dismissal for lack of subject matter jurisdiction. When evaluating a RUSCC 12(b)(1) motion, the court must accept as true any allegations of fact made by the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 16, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). However, the burden is on plaintiff to establish jurisdiction. *Reynolds*, 846 F.2d at 748 (citing cases).

Defendant's original motion requires the court to decide whether the November 29, 1988 letter from plaintiff to Contracting Officer Lawrence constituted a claim under

---

**4.** Plaintiff incorrectly calculated this amount. It should be $63,291.70.

the CDA and applicable case law. If answered in the affirmative, the court must determine whether Ms. Lawrence's December 28, 1988 letter constitutes a final decision as to the claims presented in plaintiff's complaint.[5]

### I. *Whether the November 29, 1988 letter constitutes a claim*

■■■ The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a).[6] A claim need not be submitted in any particular form or use any particular wording. *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). Nonetheless, a claim must be "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* Moreover, a claim must request a decision from the contracting officer. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1395 (Fed.Cir.1987). A claim, however, does not constitute such for purposes of the CDA merely by virtue of its being referred to by a party as a claim. *See Mingus*, 812 F.2d at 1394. In *Cubic Corp. v. United States*, 20 Cl.Ct. 610, 616 (1990), the Claims Court summarized the criteria for proper submission of a claim: The purported claim must be 1) an actual claim; 2) in writing; 3) sent to the contracting officer; and 4) a request for a final decision. Judge Robinson explained: "The relevant factors in this analysis are whether the contractor asserted specific rights, requested specific relief, and requested the ... [contracting officer] to render a final decision." *Id.* at 616 (citing cases).

In addition to the above factors and requirements, the Federal Circuit recently added an analytical element to the analysis of whether a particular writing constitutes a claim. In *Dawco Construction, Inc. v. United States*, 930 F.2d 872 (Fed.Cir.1991), the successful contractor, Dawco, and the United States Navy (the "Navy") entered into a contract involving, in part, landscaping for the grounds of six individual housing areas. Dawco subcontracted the landscaping work to J.C. Landscape ("JCL"). After award, the Navy decided to landscape only two of the six areas. In performing the work, JCL encountered differing site conditions.

■■ Dawco and the Navy subsequently exchanged numerous pieces of correspondence. One of the issues before the Federal Circuit was whether Dawco, in any of its correspondence, properly submitted a "claim" under the CDA. As the fulcrum of its decision, the Federal Circuit stated that to constitute a claim, "[a] contractor and the government agency must already be *in dispute* over the amount requested.... Unilateral cost proposals or correspondence suggesting disagreement during negotiations, while they may ultimately lead to a dispute, do not, for purposes of the Act, satisfy the clear requirement that the request be in dispute." *Dawco*, 930 F.2d at 878 (emphasis in original) (citing *Mayfair Constr. Co. v. United States*, 841 F.2d 1576, 1577 (Fed.Cir.), *cert. denied*, 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988)). Worded differently, if a dispute over the payment request does not exist at the time of communication to the contracting officer, then no claim emanates from that communication. The Federal Circuit stated that the early letters from Dawco did not constitute a claim because they were merely attempts to "spur negotiations." *Dawco*, 930 F.2d at 879. For example, one letter explained "that Dawco 'would like to start settlement negotiations as soon as possible'...." *Id.* at 875. However, the last letter from Dawco did amount to a claim because it indicated "that negotia-

---

5. If this December 28 letter acts as an operative final decision, then this court lacks jurisdiction because plaintiff filed suit more than one year thereafter. 41 U.S.C. § 609(a)(3); *Borough of Alpine v. United States*, 923 F.2d 170, 172 (Fed. Cir.1991).

6. The CDA provides the sole avenue for contractors seeking redress from the Government. *See W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed.Cir.1983).

tions had clearly been abandoned...." *Id.* at 879.[7]

In the instant case, plaintiff contends that its letter of November 29, 1988, does not constitute a claim under 41 U.S.C. § 605(a). Relying primarily on *Metric Construction Co. v. United States*, 14 Cl. Ct. 177, 179 (1988), and *Hoffman Construction Co. v. United States*, 7 Cl.Ct. 518, 525 (1985), plaintiff argues that its failure to request specifically a final decision by the contracting officer forestalls any claim arising from the November 29 letter. It asserts that the demands in the letter were merely indicia of an intent to negotiate. Further, plaintiff contends that it "did not clearly identify the entire amount of monetary compensation or time extension requested....", Plf's Br. filed Feb. 8, 1991, at 11, and therefore did not state a sum certain, a requirement for a legally effective claim.

Defendant rejoins that plaintiff's November 29, 1988 letter was a claim. Relying on *Mendenhall v. United States*, 20 Cl.Ct. 78 (1990), and *Contract Cleaning*, defendant contends that the court must look to the "totality of the circumstances," *viz.*, even if plaintiff did not specifically request a final decision, one can characterize the November 29 letter as the "straw that broke the camel's back," Def's Br. filed Mar. 11, 1991, at 2, thereby converting arguments and demands in previous letters into a claim. According to defendant, insofar as plaintiff stated a specific dollar amount in the November 29 letter, along with a specific number of days that plaintiff sought as an extension of time, plaintiff was requesting a sum certain and, as a result, presented a claim to the contracting officer.

Looking first to the language of the November 29, 1988 letter, the court notes that plaintiff referred at least four times to "our claim." Indeed, plaintiff characterized the $20,670.70 payment request as "our total claim." As defendant correctly notes, *Contract Cleaning* counsels that

the CDA does not require a contractor to use any particular wording. 811 F.2d at 592. Thus, plaintiff's use of the term "claim" does not, in the absence of other factors, render the November 29 letter a claim. However, plaintiff also referred to the payment and time extension demands in writing and sent them to the contracting officer, thereby satisfying three out of four elements of the test formulated in *Cubic*.

■ As derived from the CDA and case law, the following four-part analysis will instruct whether plaintiff's November 29, 1988 letter qualifies as a claim: whether the letter clearly and unequivocally 1) asserted specific rights; 2) requested specific relief of a sum certain; 3) requested a final decision; and 4) whether the letter, in conjunction with the totality of circumstances, was sent in the context of an ongoing dispute between the parties as to which they previously had abandoned negotiations.

### 1. *Assertion of specific rights*

■ Plaintiff's November 29 letter stated the basis for its request for payment and time extension, as required by *Contract Cleaning*, 811 F.2d at 592. Mr. Alvarez, plaintiff's President, characterized the first extension of time as necessary "to verify color, structural integrity including re-designed footings and other items ... already approved at the time of negotiations." Mr. Alvarez also requested payment for additional work required to repair a stem wall to the Army's satisfaction. Finally, Mr. Alvarez stated that the time and money required for this work necessitated additional overhead costs because of "the government's failure to address the original negotiations and convey the negotiations, the contract, the modification and Sun Eagle's original proposal." While plaintiff's assertion of its right to payment and an extension of time is perhaps not a model of clarity, the letter notified the contracting officer as to the basis of plaintiff's request for additional money and time. As such, the letter asserted specific rights.

---

7. The text of this letter was not a part of the record before either the Federal Circuit or the

court below. *Dawco*, 930 F.2d at 879.

### 2. Request for specific relief of a sum certain

The next issue is whether plaintiff requested specific relief. *Tecom, Inc. v. United States*, 732 F.2d 935, 936 (Fed.Cir. 1984). The Claims Court in *Z.A.N. Co. v. United States*, 6 Cl.Ct. 298, 304 (1984), required a claim to state the amount sought. As with the basis for a claim, the contracting officer must receive a "clear and unequivocal notice" of the amount of the claim. *Metric*, 14 Cl.Ct. at 179. In *Metric* the court recognized a claim where the amount in dispute could be determined by a simple mathematical calculation or otherwise derived from the contractor's submission. *Id.* at 180. Little doubt exists that the November 29 letter quantified amounts of money and time. However, whether these amounts relate to the complaint at issue is another matter. To the extent that plaintiff's complaint asks for payment for work not itemized in the November 29 letter, that work is not subject to any statutory limitations applicable to any claims set forth in that letter.

In the November 29 letter, plaintiff requested $20,670.00 [8] and 45 days' extension time.[9] Significantly, plaintiff requested payment for additional concrete footings and stems as early as July 28, 1988. The November 29 letter also requested $2,000.00 for labor and materials required to repair the stem wall and $12,275.00 in extended overhead for the duration of the contract. The court regards these figures as sums certain. Plaintiff even totalled the claims for the contracting officer to facilitate mathematical calculation, although the total appears incorrect.

Plaintiff argues that *Metric* compels this court to regard the November 29 letter as not stating a sum certain. In *Metric*, however, the contractor only stated a request "exceeding" a certain amount; it gave no exact total. 14 Cl.Ct. at 178. Further, in *Metric*, the letter in question contained voluminous exhibits stating varying dollar amounts, one indistinguishable from the other. *Id.* at 179–80. The instant case involves a single letter with consistent dollar figures and no exhibits. Thus, the November 29 letter does state a sum certain as to any "claims" made in that letter.

### 3. Request for final decision

Third, this court must examine whether plaintiff requested a final decision. While *Contract Cleaning* counsels that no particular magic language is required to create a claim, 811 F.2d at 592, the Federal Circuit in *Mingus Constructors* elaborated that the claim must request a final decision. 812 F.2d at 1395. In the instant case, plaintiff did not expressly request a final decision in the November 29 letter, nor is there any implication that plaintiff desired a final decision. The letter sets forth a statement of rights and payment amounts and requests a meeting to discuss these issues. Indeed, it would be inconsistent to find that plaintiff impliedly requested a final decision when it expressly requested a meeting to discuss the situation. Further, this court observes that even an explicit request for a final decision combined with a sum certain and statement of specific rights does not necessarily constitute a claim. *See Dawco*, 930 F.2d at 877–78; *see also Hoffman*, 7 Cl.Ct. at 524–25 (letter requesting meeting to resolve issues did not request final decision and therefore did not constitute an "assertion of entitlement").

Defendant argues that the regulation defining a claim under section 605(a) does not specify that the letter seek a final decision. The Federal Acquisition Regulations ("FAR") define a "claim" as

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, ... A voucher, invoice, or other routine request for payment

---

8. $12,275 plus 8,295 does not equal $20,670.00.

9. The court notes that in this letter plaintiff variously requested 30-, 45- and 60–day extensions to the contract. However, the court regards "sum-certain" as signifying a request for an amount of money, not time. *See Metric Constr.*, 14 Cl.Ct. at 179 (claims must specify a particular monetary amount).

that is not in dispute when submitted is not a claim. . . .

FAR § 33.201, 48 C.F.R. § 33.201 (1990) (quoted in *Dawco*, 930 F.2d at 877–78). By this argument defendant seems to suggest that the Federal Circuit's requirement is superfluous or inconsistent with the regulation. *Mingus* and *Dawco* are neither, and they are binding precedent, whereas defendant commends the Claim Court's decision in *Mendenhall* which appears to have glossed over the requirement.[10] Claims Court decisions are not binding precedent. Defendant's argument is rejected.

### 4. *Abandonment of negotiations*

Finally, this court must examine the circumstances in which plaintiff drafted the letter at issue. A claim only can arise when the parties are in dispute over a payment request. *Dawco*, 930 F.2d at 878. However, the converse is not necessarily true, to wit, that any time the parties are in a dispute, any payment request automatically becomes a claim. Indeed, the Federal Circuit in *Dawco* stated that a claim only exists when the parties clearly have abandoned negotiations and the amount claimed is definitely in dispute. *Id.* at 879.

Problems beset this contract almost from its inception. On July 28, 1988, four months prior to the letter in question, plaintiff already was complaining about delays, specifically requesting $6,295.70 and five additional days to install the concrete footings and stems. The contracting officer disputed some of the amount in her August 19 letter, but, significantly, allowed certain increased costs for overhead, profit, taxes, and bonds. The contracting officer requested further re-proposals and negotiations. On September 14, plaintiff accepted the contracting officer's cost calculations.[11] Thus, as of the November 29, 1988 letter, the concrete footing and stem issue seemed to have been resolved. At the very least,

both parties were willing to negotiate about the request. As a result, the footing and stem payment requests could not constitute any part of a claim expressed in the November 29 letter.

Plaintiff's claim for additional time to complete the project was also not clearly in dispute. The November 29 letter states that plaintiff required additional time in order "to verify color [and] structural integrity including re-designed footings. . . ." No indication of any previous request for additional time other than that associated with the footing/stem issue is apparent. However, as noted above, those items were never clearly in dispute, nor does any evidence indicate that the contracting officer refused to grant additional time until after the November 29 letter. In any case, the November 29 request for 45 days' additional time was the first such request, and nothing in the record indicates that the parties viewed this item as nonnegotiable.

Plaintiff's final request in the November 29 letter for an additional overhead payment of $20,670.70 was likewise not clearly in dispute. Significantly, the Army accepted the only previous overhead request by plaintiff. Again, nothing in the record reflects either the contracting officer's or plaintiff's unwillingness to discuss this issue.

The circumstances surrounding plaintiff's November 29, 1988 letter are illuminating. Prior to the contracting officer's November 17 letter to plaintiff communicating various deficiencies in the Butler building, the last contact between the parties was an amicable September 14 letter from plaintiff accepting the contracting officer's revised costs for footings and stems. Further, plaintiff's letters of November 28 and 29 requested a meeting to discuss alleged contractual deficiencies. While a desire to meet is not dispositive on the claim issue, *Contract Cleaning*, 811 F.2d at 592,

---

**10.** The Claims Court acknowledged that the contract did not ask for a final decision, but ruled that requesting " 'in the first instance' " a decision had the same effect. 20 Cl.Ct. at 83.

**11.** No indication exists in the record before this court that the September 14, 1988 cost calcula-

tions were not acceptable to the Army. The next mention of the concrete footings and stems is the November 29, 1988 letter. Thus, it is difficult to characterize the footing/stem payment request as of November 29 an on-going dispute.

such requests are evidence of a desire to continue negotiations, rather than an effort to resolve the dispute formally.

Lastly, because the request to meet and discuss the disagreement is considered along with the fact that plaintiff did not request a final decision, *see Mingus*, 812 F.2d at 1395; *Hoffman*, 7 Cl.Ct. at 525–26, this court cannot say that negotiations clearly were abandoned. According to a government memorandum to file, a meeting was held on January 4, 1989, in which both parties discussed payments and responsibilities under the contract. The occurrence of such a meeting undercuts the contention that the parties had reached an impasse by November 29, 1988.

It is instructive to analyze plaintiff's letters, assuming, *arguendo*, that all amounts requested were in dispute. Even in such a situation, plaintiff's November 29 letter does not constitute a claim. A disagreement alone, without an intent to discontinue negotiations, is insufficient to transform a request into a dispute, hence a claim. *Dawco*, 930 F.2d at 878.

The court concludes that plaintiff's November 29, 1988 letter did not constitute a claim. Consequently, Ms. Lawrence's December 28, 1988 letter is inoperative and need not be evaluated.

II. *Whether plaintiff's claim that the Government caused delay as a defense against liquidated damages constitutes a contractor claim*

At argument defendant raised the issue of certification. In its oral motion to dismiss, defendant contended that plaintiff's request for a release of $18,400.00, withheld by the Army as liquidated damages, constitutes a contractor, not a government, claim. Since liquidated damages represent a contractor claim, defendant's argument continues, the entire claim in plaintiff's October 23, 1989 letter must be certified, in that the total amount requested by plaintiff exceeds $50,000.00. 41 U.S.C. § 605(c). Defendant also asserts that the attempted certification by Mr. Alvarez is insufficient because it does not state that the supporting documentation was accurate and com-

plete to the best of his knowledge. The court allowed plaintiff to respond and defendant to reply by brief.

Plaintiff acknowledges that its October 23, 1989 letter states a claim in excess of $50,000.00, but characterizes the withholding of $18,400.00 in liquidated damages as a government claim, which should not be included when calculating whether plaintiff's claim reached the $50,000.00 threshold. Alternatively, if certification is required, it is plaintiff's position that Mr. Alvarez's certification substantially complies with the requirements of the CDA.

Defendant relies on *Placeway Construction Corp. v. United States*, 920 F.2d 903 (Fed.Cir.1990), and three Claims Court cases, *Elgin Builders, Inc. v. United States*, 10 Cl.Ct. 40 (1986); *Z.A.N. Co.*, 6 Cl.Ct. 298; and *Warchol Construction Co. v. United States*, 2 Cl.Ct. 384 (1983).

In *Elgin Builders* the contracting officer (the "CO") assessed liquidated damages totalling $54,000.00. The contractor responded by seeking recovery in the form of time extensions and additional compensation. The court stated:

The assessment of liquidated damages is a government claim against the contractor.... Thus, plaintiff may proceed to contest the CO's decision in the instant action. That defense, however, would be limited to the nature of, and the issues present in, the assessment itself—that is, for example, to contest that there was any delay in contract completion.

Where, however, the contractor seeks to contest the assessment of liquidated damages by claiming entitlement to time extensions or other relief, the court is presented with a claim by the contractor against the government and that must first be presented to the CO. (*The requirement for certification is not determined based on the amount of liquidated damages being contested but on the amount of money, if any, claimed by the contractor.*) *See, Z.A.N. Company v. United States*, 6 Cl.Ct. 298 (1984). [I]f plaintiff intends—in connection with its contest of the assessment—to raise any issue of relief to which it might be

entitled, such as the contractor's claim of entitlement to time extensions, such claims must first be presented to the CO....

*Elgin Builders,* 10 Cl.Ct. at 44 (emphasis added).

*Z.A.N.* involved a setting wherein a government contractor had its contract terminated for default by the CO. The CO subsequently assessed plaintiff with the excess cost of reprocurement. The Claims Court explained:

> In addition to the nature and specificity of the claim, it may also be relevant to consider the identity of the party which is asserting the claim, particularly inasmuch as a given circumstance may generate assertions of rights by both parties to the contract....
>
> For example, the assertion of its right to collect liquidated damages by reason of the contractor's tardiness is clearly a claim by the government against the contractor, and a CO's decision in this connection is final; this finality is not diminished by any absence of certification by the contractor when it seeks solely to defend against the government's assertion of its claim for liquidated damages. *See Ruhnau–Evans Ruhnau Assoc. v. United States,* 3 Cl.Ct. 217 (1983). On the other hand, if the contractor further asserts, in addition to its defense of the government's claim, its right to additional relief such as extensions of time and/or money ..., then this portion of the dispute may be identified as a claim by the contractor against the government requiring submission in writing and, if in excess of $50,000, certification. *See, e.g., Warchol Constr. Co. Inc. v. United States,* 2 Cl.Ct. 384 (1983).

*Z.A.N.,* 6 Cl.Ct. at 304 (footnote omitted).

In *Warchol* the contractor sought recovery based on the improper assessment of liquidated damages and differing site conditions. Defendant contended that plaintiff failed to properly certify its claim. The court held:

> The contracting officer felt that the liquidated damages of $147,900 for delays attributable to plaintiff was appro-

priate. Plaintiff believing it was not responsible for any delays, felt that the assessment of liquidated damages in any amount was inappropriate. Before the contracting officer, plaintiff sought time extensions sufficient to cover a period of time that would preclude any assessment of liquidated damages against it. Accordingly, the dispute between the parties centered on responsibility for the delays in the completion of the contract.

*Warchol,* 2 Cl.Ct. at 393.

After the contracting officer reduced the liquidated damages by $48,000.00, from $147,900.00 to $99,000.00,

> [p]laintiff appealed from that decision in Count II of its complaint seeking to recover the $99,000 the contracting officer withheld from it as liquidated damages. Count II of its complaint constitutes a clear refutation of plaintiff's argument that its claim is not a monetary claim. It is concluded that the claim before the contracting officer and the claim asserted in Count II of the complaint represent a claim that must be certified for purposed of direct access to this cou[r]t.

*Id.* at 393 (footnotes omitted).

Synthesized, these three Claims Court cases instruct that if a contractor contends that no delay occurred in contract performance, the assessment of liquidated damages is a government claim for which certification is unnecessary. However, if a contractor asserts an entitlement to time extensions or other relief that would offset the assessment of liquidated damages, such a claim is a contractor claim, but only to the extent that the contractor is requesting a set off. To that extent, the contractor must certify its claim before jurisdiction vests in the Claims Court.

The Federal Circuit, however, has simplified the inquiry into when certification is a jurisdictional prerequisite. In *Placeway,* 920 F.2d 903, the Government withheld $297,226.12 in contract funds from the contractor. Plaintiff submitted an uncertified claim to the contracting officer, seeking recovery for the contract funds. The contracting officer denied the claim, reasoning that plaintiff failed to complete the con-

tract in a timely fashion. In Count II of its complaint filed in the Claims Court, plaintiff sought recovery of the $297,226.12, plus interest. The Federal Circuit, in holding that the uncertified claim was properly before the Claims Court, adopted the Claims Court's characterization that the Government's withholding of contract funds was tantamount to adjusting the contract's terms. 920 F.2d at 906. This government action constituted a government claim, for which certification was not required. *Id.**

### ORDER ON RECONSIDERATION

August 7, 1991.

NETTESHEIM, Judge.

■ Pursuant to RUSCC 59(a) defendant has moved for reconsideration of that part of the court's June 20, 1991, opinion construing the decision in *Placeway Construction Corp. v. United States*, 920 F.2d 903 (Fed.Cir.1990), as not requiring certification of plaintiff's claim challenging the assessment of liquidated damages on the basis that the Army was responsible for the delays that gave rise to the assessment. Plaintiff was ordered to respond, and defendant was given leave to reply. Before the date for its response, plaintiff advised that the parties were endeavoring to settle the case. This development is desirable, but does not dispense with the need to modify the court's plenary opinion in light of defendant's motion. Accordingly, the court enters this order addressing the issues presented by defendant's motion.

Once again, the certification requirements of the CDA are the focus of defendant's concern. This court's considered judgment is that the only solution to the jurisdictional conundrum presented by the CDA's directives on what constitutes a contractor claim that requires certification and a government claim that does not is to amend the CDA. The amount of litigation engendered by the terms or requirements of the CDA relating to jurisdiction is staggering, and the results have not been satis-

factory at both the trial and appellate levels; hence, litigation continues.

This case was brought by a small contractor pursuing a relatively small claim. To date plaintiff has defended against two motions to dismiss on jurisdictional grounds, made serially, and the motion for reconsideration, which raises arguments that could have been made in the earlier briefing, since *Placeway* was the centerpiece of the parties' arguments on defendant's motion to dismiss. RUSCC 1(a)(2) charges the Claims Court to construe its rules "to secure the just, speedy, and inexpensive determination of every action." Before the case went into settlement, defendant's approach inhibited the court's furtherance of these goals.

In its motion for reconsideration, defendant contends that this court erred because *Placeway* did not overrule three Claims Court cases, *Elgin Builders, Inc. v. United States*, 10 Cl.Ct. 40 (1986); *Z.A.N. Co. v. United States*, 6 Cl.Ct. 298 (1984); and *Warchol Construction Co., Inc. v. United States*, 2 Cl.Ct. 384 (1983). For purposes of certification, these cases distinguish between a challenge to the assessment of liquidated damages on the basis that no delay took place and a challenge on the basis that a delay took place, but that the Government caused it. Since the contractual mechanism for resolving the second type of challenge is through a time extension or monetary relief, these cases reasoned that such a request for a time extension amounted to an adjustment of contract terms. This phrase was employed in the CDA's certification requirement, to wit, "[f]or claims of more than $50,000.00 the contractor shall certify ... that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." 41 U.S.C. § 605(c) (1988). Therefore, these cases stand for the proposition that since the second type of challenge seeks a contract adjustment, such a claim is a contractor claim and must be certified if the $50,000.00 threshold is met.

---

* Editor's Note: Remaining portions of opinion deleted. See Order on Reconsideration August

7, 1991, at pp. 480–81.

Defendant correctly notes that the Federal Circuit in *Placeway* did not overrule these three Claims Court cases. Nor did the Federal Circuit discuss them. *Placeway* can be read as consistent with the three cases, if *Placeway* were restricted to its facts. *Placeway* involved a set-off; *Elgin Builders, Z.A.N.,* and *Warchol* involved liquidated damages, as does the case at bar. In this court's view, however, *Placeway* should be read to encompass liquidated damages, because its reasoning applies with equal force to government claims for liquidated damages and it satisfactorily resolves the jurisdictional issue before this court. *Placeway* held that a contractor's challenge to to a government claim need not be certified. This court holds that plaintiff is challenging a government claim to liquidated damages and making its own contractor claim to recover amounts withheld for liquidated damages. The latter must be certified.

Statutory construction begins with the language of the statute, *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991) (citing *Mallard v. U.S. District Court for Southern Dist. of Iowa,* 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)), with the assumption that the language's ordinary connotation accurately reflects congressional intent. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985); *Neptune Mut. Ass'n v. United States,* 13 Cl.Ct. 309, 312 (1987), *aff'd in part and vacated in part on other grounds,* 862 F.2d 1546 (Fed.Cir.1988). Where a statute's language is unambiguous, its plain meaning is conclusive and judicial inquiry halts at that point, *Martin J. Simko Constr., Inc. v. United States,* 852 F.2d 540, 542 (Fed.Cir.1988) (citing cases), or, put another way, "[a]bsent a clearly expressed legislative intention to the con-

trary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. G.T.E. Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). If a literal reading of the statute would " 'compel an odd result,' " a court must determine legislative intent from other evidence, such as the circumstances surrounding enactment. *Public Citizen v. Department of Justice,* 491 U.S. 440, 454, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989) (quoting *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989)).[1]

The rules of statutory construction also require that "statutes should be read to avoid rendering superfluous any parts thereof...." *Astoria Fed. Sav. and Loan Ass'n v. Solimino,* —— U.S. ——, 111 S.Ct. 2166, 2168, 115 L.Ed.2d 96 (1991); *Horner v. Merit Systems Protection Bd.,* 815 F.2d 668, 674 (Fed.Cir.1987) ("[A] statute should not be interpreted so as to render one part inoperative....") (citing *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)). "[A] section of a statute should not be read in isolation from the context of the whole Act...." *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962) (footnote omitted).

The CDA employs the term "claim" in various contexts. Defendant argues, and this court concurs, that the term "claim" means the same throughout the Act. Indeed, defendant successfully made that argument to the panel that decided *Placeway.* In its plenary opinion, which was subsequently redacted prior to publication, the Federal Circuit held: "We conclude that Placeway itself submitted a 'claim' for payment of the balance of the contract price, a claim separate from the government claim for damages." *Placeway,* No. 90–5017, slip op. at 7 (Fed.Cir. Aug. 7, 1990) (footnote and citation omitted). The Feder-

---

**1.** "Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it ex-

ists.' " *Public Citizen,* 491 U.S. at 455, 109 S.Ct. at 2566 (quoting *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928) (Holmes, J.)); *Neptune Mut.,* 13 Cl.Ct. at 312–13 (citing *Reid v. Department of Commerce,* 793 F.2d 277, 281–82 (Fed.Cir. 1986)).

al Circuit also ruled that Placeway was not required to certify its claim because the CDA "explicitly refers only to 'contract adjustment' claims as requiring certification." *Placeway*, slip op. at 8 n. 4 (citation omitted). In "Appellee's Petition for Rehearing" in *Placeway*,[2] filed September 26, 1990, defendant argued:

> Section 6(a) of the CDA provides that "all claims by a contractor.....shall be in writing and shall be submitted to the contracting officer." 41 U.S.C. § 605(a) (1982). Section 6(c) of the CDA provides that "for claims of more than $50,000, the contractor shall certify the claim" in the manner specified in the act. 41 U.S.C. § 605(c) (1982). The statute makes no distinction between "claims" which must be submitted to the contracting officer and those which must be certified other than the requirement that only "claims" in excess of $50,000 must be certified.

> Notwithstanding the fact that the statute makes no distinction between the definition of a "claim" for purposes of section 6(a) and a "claim" for purposes of section 6(c), the Court made such a distinction here. The Court held that the contractor had submitted a "claim" for purposes of section 6(a) but not a "claim" for which section 6(c) requires certification.

> The Court based its holding not upon any difference in the definition of "claim" as utilized in the act but upon the content of the certification required by section 6(c). That section requires a certification, among other things, that "the amount requested accurately reflects the contract adjustment....." requested by the contractor. 41 U.S.C. § 605(c) (1982). From this specification of the content of a certification, the Court concluded that a contractor could submit a "claim" for purposes of section 6(a) which is not a "claim" for purposes of the certification requirement contained in section 6(c).

> There is, in fact, no justification for this distinction. Both section 6(a) and section 6(c) utilize the same term: "claim". Moreover, the structure of the act clearly indicates that Congress did not intend the terms to possess different meanings when utilized in different subsections of the act. Section 6(a) requires the submission of a claim to the contracting officer. Section 6(c) does not refer to a different claim but only specifies when the claim submitted to the contracting officer pursuant to section 6(a) must be certified.

> Moreover, assuming that the content of the certification requirement contained in section 6(c) defines the term "claim," for purposes of that subsection, but not for purposes of subsection 6(a), the Court reached a logically inconsistent result. If Placeway in this case, did not submit a "claim" pursuant to subsection 6(c) because it did not request a contract adjustment, then, contrary to the Court, it did not, for the same reason, submit a claim for purposes of subsection 6(a). This logically inconsistent result can only be avoided by assuming that Congress intended the term "claim" as used in subsection 6(a) to possess a different meaning than that possessed by the term "claim" as used in subsection 6(c). There is simply no support for this conclusion in either the statute or its legislative history.

Appellee's Petition for Rehearing in *Placeway*, No. 90–5017, filed Sept. 26, 1990, at 6–8. In short, defendant argued that Congress intended the term "claim" to have the same meaning throughout the CDA. Based on this argument, the Federal Circuit deleted one section of its opinion, including the above-quoted rulings. *Placeway Construction Corp. v. U.S.*, 920 F.2d 903 (Fed.Cir.1990) (order on petition for rehearing). In other words, the deletion supports defendant's assertion that the term "claim" is not defined restrictively in

---

**2.** It need not be gainsaid that before defendant's motion for reconsideration in this case, the unexpurgated version of *Placeway*, defendant's brief on rehearing, and the Federal Circuit's order deleting a portion of its decision in *Placeway* were available to defendant, but not to plaintiff or to this court.

section 605(c) only to refer to claims seeking contract adjustments. Defendant asks that this court interpret the fact of the deletion as inconsistent with this court's ruling that a claim for liquidated damages seeking an adjustment in contact terms, *i.e.*, resisting the assessment on the basis of government-caused delay, is a contractor claim that need not be certified.

The problem with the significance that defendant attaches to the deleted portion of *Placeway* is that it undercuts the interpretation that defendant urges in this case. If a claim, is a claim, is a claim under the CDA, the proponent of this interpretation must confront the CDA's provision dealing with interest. 41 U.S.C. § 611 provides, in pertinent part:

> Interest on amounts found due contractors on *claims* shall be paid to the contractor from the date the contracting officer receives the *claim* pursuant to section 605(a) of this title from the contractor until payment thereof. . . .

(Emphasis added.) Thus, if a contractor successfully prosecutes a claim, interest will be due from the date on which the claim is received. Defendant subscribes to the *Elgin Builders—Z.A.N. Co.—Warchol* line of cases, which distinguishes a claim to recover an amount withheld as liquidated damages as a government claim, when the contractor asserts that no delay occurred, on the one hand, from the same claim in the same amount as a contractor claim, on the other hand, when the argument for recovery is that a delay occurred and that the Government caused it.

The following hypothetical illustrates the inconsistency in defendant's position. Assume that a contractor makes a claim to the contracting officer to recover $18,000.00 withheld as liquidated damages and asserted as a government claim. The contractor contends that no delay occurred. The contractor is successful. According to defendant, the contractor cannot recover interest on its $18,000.00. If the same contractor submitted a claim in the same amount on the basis that the Government caused the delay, the contractor would recover interest on its $18,000.00. The CDA offers no principal basis for distinguishing between the two scenarios. In either case the contractor has made a monetary claim for $18,000.00, but it is defendant's reading of the nature of that claim that dictates the different treatment of the same claim. This result is inconsistent with the argument that defendant made to the Federal Circuit on its petition for rehearing in *Placeway*.

In *Placeway* the Government sought an adjustment in contract terms by virtue of its having set off an amount of money in order to satisfy potential third-party claims. The contract itself did not stipulate the Government's right to do so; hence, the Federal Circuit agreed with the trial court that the government claim was "tantamount to seeking 'the adjustment . . . of contract terms.'" *Placeway*, 920 F.2d at 906 (quoting *Placeway Construction Corp. v. U.S.*, 18 Cl.Ct. 159 at 164 (1989), in turn quoting FAR § 33.201 (1988)). In contrast, a government claim for liquidated damages does not seek to adjust contract terms, but, rather, to enforce them. It therefore could be argued, consistent with *Placeway*, that a claim by a contractor to recover liquidated damages on the basis that the Government caused a delay, and hence that the contractor is entitled to extensions of time to off-set the delay, is tantamount to seeking an adjustment of contract terms by virtue of the modification that would be required to effect the extension of time. It could also be argued that the same claim asserting that no delay occurred is not a contractor claim because no contract modification would be required. One problem with this approach is that it ignores the other definitions of a claim in FAR § 33.201:

> **Claim**, as used in this subpart, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a

contract clause that provides for the relief sought by the claimant....

Thus, a claim is also the assertion of a right to recover payment of money in a sum certain. A government claim asserting the right to recover liquidated damages seeks the payment of money in a sum certain. A claim to recover liquidated damages on the basis that no delay occurred, *i.e.*, a government claim, in defendant's view, also seeks the payment of money in a sum certain. The other problem with defendant's argument is that the decision in *Placeway*, as redacted, stands for the proposition that "claim" has a consistent meaning throughout the CDA, so that a distinction between claims seeking contract adjustments and those that do not is not supportable.

If a claim for liquidated damages is not viewed as a government claim for which certification is not required, 41 U.S.C. § 605(a) ("All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer...." *See Placeway*, 920 F.2d at 906–07), then one might ask whatever is a "government claim"? In the real world, a claim for liquidated damages is the quintessential government claim. Nevertheless, when a contractor challenges a liquidated damages assessment by making claim in a claim letter for the amount withheld, the contractor also is making a contractor claim within the contemplation of section 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision....") and section 611 ("Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim ... from the contractor....").

In its plenary opinion, this court reached a result consistent with that part of the Federal Circuit's opinion in *Placeway* that recognized a claim seeking a contract adjustment as a government claim. However, this court overread *Placeway* by ruling that it followed that the corresponding claim by plaintiff did not require certification. The June 20, 1991 opinion of this court overread the redacted *Placeway* in the following passages:

Thus, the rule after *Placeway* appears to be that a contractor's assertion of defenses to the Government's withholding of contract funds is not dispositive of the question of whether certification is required. The inquiry now focuses on which party took the initial action. If the Government withheld funds, then a suit by the contractor seeking recovery of those funds is, in all circumstances, a government claim for which certification is unnecessary.

Defendant misinterprets the holding of *Placeway* when it argues: "The facts in this case, however, go a step beyond *Placeway*, for here, the contractor asserts that the Government should not have assessed liquidated damages because any delay was caused by the Government itself. Plaintiff claims, in essence, entitlement to extensions of time that would vitiate the liquidated damages." Def's Br. filed June 3, 1991, at 6. Although such an argument would have met with success in the earlier Claims Court cases, *e.g.*, *Warchol*, 2 Cl. Ct. at 393, the Federal Circuit in *Placeway* dealt with precisely the situation presented in this case. The contractor in *Placeway* also challenged the Government's offset by claiming that the Government caused delays that extended the contract's completion date. *Placeway Constr. Corp. v. United States*, 18 Cl.Ct. 159, 162 (1989), *vacated and remanded*, 920 F.2d 903. After the decision in *Placeway*, a contractor can defend against the Government's withholding of liquidated damages from the balance due on the contract on the theory that the Government caused the delay and is not required to certify its claim if the amount of the claim for remission of liquidated damages causes the total amount claimed to exceed $50,000.00. Thus, even though plaintiff's defense against the withholding of liquidated damages is tantamount to a claim for an extension of time (which plaintiff does not seek), certification is not required.

*Sun Eagle,* slip op. at 17. The quoted language shall be deleted, as well as the last paragraph of the body of the opinion, the conclusion, and the ordering language.*

The Federal Circuit in *Placeway* held that the Claims Court has jurisdiction over a final decision on a government claim even though the claim was not certified: "[T]he [contracting officer's] decision was adverse to Placeway and thus it could properly appeal to the Claims Court. As a final decision on a government claim, the Claims Court has jurisdiction, even though the claim was not certified...." 920 F.2d at 907. The decision in *Placeway* thus allowed the contractor to challenge the government claim without having certified its own claim. In the case at bar, the contracting officer made a claim in writing for liquidated damages on November 17, 1988. On plaintiff's invoice dated February 6, 1989, the contracting officer by date of September 18, 1989, reflected an adjustment of $18,400.00. The Army made a government claim within the contemplation of section 605(a). The contractor challenged the government claim and also asserted a claim for payment of the $18,-400.00 withheld as liquidated damages in its claim letter of October 23, 1989. Plaintiff made a contract claim under section 605(a).

The issues remain whether plaintiff was required to certify its own claim challenging the assessment of liquidated damages and, if so, whether it was sufficient, and, if it was insufficient, whether the court retains jurisdiction of plaintiff's challenge to the government claim in the same amount.

Defendant makes two policy arguments to support *Elgin Builders–Z.A.N. Co.– Warchol* distinction between government and contractor claims. The first is that allowing a contractor to file an uncertified claim challenging the assessment of liquidated damages on the ground that the Government caused the delay leads to legal uncertainty, because the contractor in negotiations could make broad and uncerti-

fied claims of contract delay, but at trial the contractor would bear the burden of proving the delay was due to a cause, including a government cause, beyond its control. This point is valid insofar as the contractor would bear the burden of proof at trial, but the antecedent proposition is invalid. Defendant's second argument that the contracting officer would not consider in negotiations broad and unsubstantiated claims of delay, but would defer them to trial so that the contractor be put to its burden. This second argument, as does part of defendant's first argument, misapprehends the nature of a liquidated damages claim. The contracting officer, not the contractor, determines the amount of liquidated damages. The contract stipulates a daily rate, and the contracting officer determines the number of days for which the contractor should be charged. The certification requirement embodies Congress' concern that contractor claims should not be fraudulent or inflated; hence, the $50,000.00 threshold requirement for certification.

The legislative history of the CDA shows that Congress was concerned with fraudulent and inflated contractor claims. As stated by Congress, the purpose of the certification requirement is to " 'discourag[e] the submission of unwarranted contractor claims.' " *Paul E. Lehman v. United States,* 230 Ct.Cl. 11, 14, 673 F.2d 352, 354 (1982) (quoting S.Rep. No. 1118, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5239). The certification represents that the claim accurately reflects a contractor's estimated value of the case. *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 407, 677 F.2d 850, 852, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). However, a contractor is not required to swear to a belief in a legal theory of recovery. *United States v. General Elec. Corp.,* 727 F.2d 1567, 1569 (Fed.Cir.1984). By holding a contractor liable for misstatements, miscalculations, and any other unsupported por-

---

* Editor's Note: Deletions made for publication of the June 20, 1991 opinion.

tions of the claim in its certification under 41 U.S.C. § 604, the certification requirement reduces frivolous and unwarranted claims. *Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426, 1429 (Fed. Cir.1989).

In contrast, the liquidated damage claims are always subject to amounts of dollars set forth in the contract and to a discrete number of days solely within the discretion of the contracting officer. A contractor's challenge to a liquidated damages claim is in the nature of a defense to a counterclaim. As such, certification does not serve the purpose identified by Congress.

The court discerns one argument that can sustain a consistent construction of the term "claim" and the contractor's duty to certify. Congress may have drafted the CDA to require a contractor certify its own claim for liquidated damages when a) the contractor wants the contracting officer to put his mind anew to the assessment in a decision letter (the contracting officer having assessed liquidated damages in the first place); and b) the contractor seeks interest on the sum. If a contractor did not claim for all or part of the liquidated damages, it still could sue for that amount in the Claims Court by contesting the government claim, *Placeway,* 920 F.2d at 907, but would not receive a decision by the contracting officer on its own claim, nor would it be awarded interest if successful. *See Cupey Bajo Nursing Home, Inc. v. United States,* 23 Cl.Ct. 406, 416–417 (Cl. Ct.1991) (contractor can challenge in court assessment levied on overpayment without filing a certified claim). The plain meaning of the CDA supports this interpretation; the legislative history does not, since the amount certified represents a liquidated sum determined by the contracting officer, not the contractor. However, the legislative history does not amount to a "clearly expressed legislative intention to the contrary" of the plain meaning of the statute. *Consumer Prod. Safety Comm'n,* 447 U.S. at 108, 100 S.Ct. at 2056. Accordingly, the plain meaning controls.

In the case at bar, plaintiff is seeking an adjustment of contract terms or monetary relief because it defends against the assessment of liquidated damages on the basis that the Army caused the delay. The claim is a claim by the contractor. The contractor made the claim in its claim letter and, if it recovers, the CDA would award the contractor interest on its claim. *Ruhnau–Evans–Ruhnau Assoc. v. United States,* 3 Cl.Ct. 217, 218 (1983) (section 611 interest inapplicable to recovery on government claim in absence of contractor claim). Plaintiff's contractor claim must be certified, as required by 41 U.S.C. § 605(c). In this case plaintiff did certify its claim. Defendant asserts that the certification is insufficient because the contractor failed to certify that the data supporting its claim were "accurate and complete to the best of the contractor's knowledge and belief," as required by section 605(c). *W.H. Moseley Co.,* 230 Ct.Cl. at 407, 677 F.2d at 852. The court need not address this issue, as the case is in settlement. However, if the issue were resolved adversely to plaintiff, the result would call for the dismissal of all of its contractor claims, and the court would retain jurisdiction only over the government claim. As a practical consequence, plaintiff likely would agree to the stay of the government claim while it recertified its contractor claims, obtained a contracting officer decision thereon, and refiled in the Claims Court. That action would be joined with the instant action and proceedings scheduled on an expedited basis.

Accordingly, based on the foregoing,

IT IS ORDERED, as follows:

Defendant's motion for reconsideration is granted to the extent that the court's June 20, 1991 opinion is modified consistent with this order, but in all other respects is mooted since the case is in settlement. Defendant's motion to dismiss is also moot.